TREASURER OF THE STATE v. M. A. WYGALL ET AL.

1. CHANGE OF VENUE—ESTATES OF DECEDENTS.—The remedy given to claimants of an estate to bring suit for its recovery, in the county where the letters of administration were issued, (Paschal's Dig., art. 1354,) is subject to the right of either party to have the venue changed, for any cause provided by the general law governing changes of venue.

2. STATUTE CHANGING REMEDY—VESTED RIGHT.—The Legislature may change, modify, or otherwise regulate the remedy, provided a substantial remedy is left for the assertion of a right. There is no vested right in a particular remedy.

3. CHANGE OF VENUE—ESTATES OF DECEDENTS—VESTED RIGHT— STATE TREASURER.—In May, 1871, the Legislature passed an act providing for the change of venue, from Fort Bend county to Travis county of a case against the State treasurer, involving the ownership of assets turned over to the treasurer, under the laws relating to the administration of the estates of deceased persons. The administration was closed in Wharton county, where the suit was begun, which was afterwards removed, by change of venue, under pre-existing law, to Fort Bend county, in April, 1871: *Held*—

1. That the suit, being against the State treasurer in his officia'., and not in his individual capacity, was in effect a suit against the State, which had been permitted under a statute applicable to it; and that the Legislature had power to protect the interests of the State, by requiring the particular suit, and all others of like character, to be removed to the District Court, at the State capital, in Travis county, where the interests of the State could be more conveniently protected.

2. Though the exercise of a legislative power, thus to provide for a change of venue after suit brought, might be used oppressively, the lack of such a power might result in the perpetration of the most flagrant injustice.

3. Where the State has, under her laws, assumed a trust in the custody of an estate not claimed by heirs, and the general rules prescribed for the administration of the trust in any particular case are inadequate, the State, by its Legislature, has power, commensurate with its assumed duties and responsibilities, to make the remedy complete, by special law, if necessary, for the protection of the just rights of others, or the security of its own in the trust property.

4. Property of an estate thus turned over to the State treasurer by an administrator, occupies the same position as property that has been escheated to the State; and in either case, it may be sued for under the permission of the laws.

5. In such a suit, the State is substantially a party, and can be sued only on its own terms, whether prescribed generally or specially; the Legislature is not limited in prescribing the terms, unless some constitutional limitation of its power exists, prohibiting it from passing the particular law for the protection of the State.

6. The act of 1870, relating to the estates of deceased persons, being prospective in its operation, though it did not authorize a suit against the State treasurer to recover assets turned over to him, when the heirs were unknown, as was done by the act of 1848, yet it did not have the effect to abate a suit properly brought for such a purpose before the act of 1870 was passed. The right to bring such a suit, once having been conferred, could not, after the institution of the suit under the act of 1848, be taken away, without the violation of a vested right in the heirs or distributees.

The following propositions are maintained as the individual opinion of the Chief Justice:

1. STATE TREASURER — ESTATES OF DECEDENTS — JUDGMENT.—A judgment cannot be rendered against the State treasurer, in his official capacity, on the suit of one claiming as an heir for uncollected assets placed in his hands under the statute. The statute only authorizes such a suit for the money when collected.

2. SAME.—The comptroller, in drawing a warrant, and the treasurer, in paying, must do it under and in accordance with the terms of a law authorizing it; and there is no law authorizing the treasurer to pay out or deliver uncollected assets of an estate; but, on the contrary, there is a law directing him to collect them, and when collected as money, he can pay the same out, on a judgment rendered against him, under the statute authorizing suit against him for the money.

3. STATE TREASURER—JUDGMENT—ESTATES OF DECED-
ENTS.—The State treasurer, as such, cannot be bound by the
judgment of a court, for that which he can find no authority to do
by the law relating to and regulating his duties as an officer of
the Government.  He does not hold property of an estate depos-
ited with him under the law in trust, to be delivered to any person
who may establish by a judgment his beneficial interest in it, but
in trust to be held until he can part with it according to the terms
of some law, which authorizes or directs him.  This is in accord-
ance with his duties as State treasurer, in which capacity he is
possessed of the assets, and not as an individual depository of
trust property, who can be compelled, by the judgment of a court
of equity, to deliver it to one who has recovered a judgment for it.

4. A suit cannot be maintained against the State treasurer, as
such, for uncollected assets of an estate, which he has no authority
under the law, to deliver.

5. The key that unlocks the State treasury, is an act of the Leg-
islature, directing a thing to be done, which may be demanded;
and not the judgment of a court, founded on equitable considera-
tions, reaching beyond and changing the terms of the law in the
disposition of property.

APPEAL from Fort Bend.  Tried below before the Hon.
Livingston Lindsay.

In addition to the facts contained in the opinion, the
papers in the cause contain the following correspondence
between the attorney for the appellees, and comptroller of
the State, with indorsements:

"AUSTIN, TEXAS, 16th May, 1871.

" COMPTROLLER OF THE STATE OF TEXAS:

" Your applicants, Joseph B. Wygall, Thomas B. Wygall,
James S. Wygall, John W. Vermillion, Corela S. Hooper,
Henry Hooper, William G. Hagerman, and Sarah Hager-
man, the heirs and only heirs of John C. Clark, deceased,
respectfully represent that they herewith file a decree against
the treasurer of the State of Texas, which directs the comp-
troller of the State of Texas to draw his warrant upon the
treasurer, for the assets and title papers of the estate of said
Clark, deceased.

" They exhibit proper powers of attorney, and respectfully

29

request that said papers, assets, &c., be delivered to them in accordance with the terms of said decree.

"W. L. ROBARDS, *Att'y for said Heirs.*"

Upon which the following indorsement was made:

"COMPTROLLER'S OFFICE,

"AUSTIN, TEXAS, *August* 16, 1871.

"Respectfully referred to the Hon. William Alexander, with request that he examine the papers and facts, and then advise the comptroller if it is his duty to turn the estate of Clark over to claimants. Very respectfully,

"A. BLEDSOE, *Comptroller.*"

And upon which the attorney general made the following indorsement:

"ATTORNEY GENERAL'S OFFICE,

"*August* 16, 1871.

"Respectfully returned, with the opinion that the estate cannot be turned over to the claimants on the within judgment, because instructions have been issued, by direction of the Governor, from this office, to have this case brought up for revision to the Supreme Court. Besides, suits are now pending, both in the United States Circuit Court, at Galveston, and in the District Court for Wharton county—suits brought by other parties, who claim to be the heirs of the estate. The estate cannot be turned over *pendente lite;* and if it were, any other set of heirs that might recover, might hold the comptroller and the treasurer responsible on their official bonds. For these, with other reasons, it is deemed improper to turn over the estate.

"ALEXANDER, *Attorney General.*"

And thereupon the comptroller made the following indorsement:

"The comptroller declines having any connection with the turning over the estate, until the courts of the country determine definitely and finally who the heirs are.

"A. BLEDSOE, *Comptroller.*"

*George Clark, Attorney General,* for appellant.—This action is not an ordinary one between citizen and citizen, but is, in its nature, a suit against the sovereign, instituted by its consent and authorized by its grace. As a question of power and law strictly, the State could have provided, that upon payment into the treasury of the unclaimed assets of a decedent, title thereto should vest in the State, to the exclusion of all future claimants; or, what would have been tantamount thereto, it could have failed to prescribe a remedy or mode of procedure for the recovery of such assets, or to have invested any of its courts with the necessary jurisdiction; for, I apprehend, without the statute in question, no suit would be maintainable against the treasurer. (Houston Tap and Brazoria R. R. *v.* Randolph, 24 Tex., 317.)

The State, through its legislative department, having, of its grace, furnished a remedy, that remedy is, at all times, subject to legislative control, liable to be changed, modified, or abolished even, at the pleasure of the law-making department of the Government. Even in ordinary actions between citizens, this is substantially correct, with the qualification, that some remedy must be always provided. (De Cordova *v.* Galveston, 4 Tex., 470; Paschal *v.* Perez, 7 Tex., 348; Bronson *v.* Kinzie, 1 How., U. S., 318.)

A jurisdiction given by statute can be wholly abrogated and taken away by similar method; and the rule has been extended, so as to include a jurisdiction conferred by the organic law, with such exceptions and under such regulations as the Legislature may prescribe. (*Ex parte* McCardle, 7 Wall., 506.) And the repeal of an act conferring or regulating the jurisdiction, operates as an abatement to suits pending. (Id.)

The application of these rules to the point in issue, seems pertinent. If the jurisdiction given by statute can be taken away in the same manner, this power ought certainly to include the lesser. The act in question does not attempt an adjudication of rights, nor, strictly speaking, does it affect

the remedy. It simply changes the forum for the determination of rights from the county of Fort Bend to the county of Travis, after a change had been effected, on motion of defendants in error, from Wharton county, the case again transferred back to that county, and a third time changed and transferred back to Fort Bend county. No contract is impaired, no right or remedy abridged; but after the cause was docketed in Fort Bend county, and before any adjudication was had, the Legislature, which had said such suit was maintainable only in Wharton county, put in exercise its undoubted power, and designated Travis county as the proper forum for final determination.

No violation of positive constitutional provision is detected in the act; and, if it be nugatory, it must be solely on the ground, that the act of changing venue is judicial in its nature, and therefore not exercisable by the legislative department. I do not so interpret the act. The true intent and meaning of it was, to authorize a change of venue, upon application of the attorney general, leaving the orders necessary, to be made by the court. The State had consented to be sued in one county, the suit had been transferred to an unauthorized county, and it now renewed its consent, taking care to designate the county of Travis, in which was the seat of Government, in which this privilege must be exercised in future. No matter what our views may be as to the propriety of such legislation, I think its competency and validity, under established principles of law, must be determined affirmatively.

. This view is strengthened by reference to the recent amendments to our Constitution. (See Gen. Laws, 1874, pp. 234, 235.) The inhibition of these amendments, as to "providing for change of venue in civil and criminal cases" by special laws, being prospective in their operation, would seem to give rise to an inference not unnatural or strained, that before their adoption, such special legislation was not unauthorized. The original instrument defining the powers of

Government was the work of the people who adopted it, and so are the amendments; and these later expressions ought not to be wholly insignificant.

Legislation of a similar nature has been sustained by the courts of other States, as not trenching upon the province of the judiciary, and an appeal has been allowed by statute after the right thereto had been barred. (Prout *v.* Berry, 2 Gill., 147; The State *v.* N. C. R. R., 18 Ind., 193.)

II. The court below erred in entertaining suit for the assets of the estate, and in rendering judgment for the delivery to defendants in error of such uncollected assets: (citing Paschal's Dig., arts. 1354–3676; 24 Tex., 317; Constitution, art. XII, sec. 6, and art. 4, secs. 20, 21; Hall *v.* Claiborne, 27 Tex., 222, 223.

*John T. Harcourt,* for appellees.—The special act, approved May 19, 1871, cannot oust the jurisdiction, or change the venue of said cause, because of the misdescription and want of identity with the pending suit. (Crane *v.* Reider, 28 Mich., 527.)

In *Ex parte* Heath *et al.*, 3 Hill, 42, it was said by the Supreme Court of New York, that the language of an act, designed to divest that court of its jurisdiction over the proceedings of inferior tribunals, "must express the intent with such clearness as to leave no room for doubt." (Parsons *v.* Bedford, 3 Pet., 433.)

I insist that the special act, changing the venue in said cause, was unconstitutional and void, because it was an exercise of judicial power. I refer the court, with much confidence, to the case of Lewis *et al. v.* Webb, 3 Me., 298.

By the laws in force in Texas at the time of the passage of the special act, the judicial power was vested in the presiding judge of Fort Bend county, to determine whether any and what reasons, or causes, existed for changing the venue in said cause. (Paschal's Dig., art. 1416.) "A motion for a change of venue is addressed mainly to the discretion

of the judge of the District Court." (San Antonio v. Jones, 28 Tex., 19.)

It was a private right of the appellees to have this case tried in Fort Bend county, unless by the general law of the State it could be made to appear to the district judge that legal causes existed for changing the venue to an adjoining county. Upon a motion made for that purpose, notice must be given to the appellees. They could appear, and, by counter affidavits, show that the pretended causes were not legal, but purely imaginary or political. Then the district judge would adjudicate upon the facts, and his judicial decision would determine the question of venue. If he erred, the appellees could, by bill of exceptions, have the ruling reviewed by the Supreme Court, and thus secure all their rights, by "the due course of the law of the land." (Smith's Comm. on Const. Constr., sec. 347.)

"In reference to acts of the nature we have been considering, each act must depend upon its peculiar phraseology and provisions. The court will look to the particular circumstances of the parties applying for, and to be affected by it, as well as their intention, and the intention of the Legislature, and the object to be accomplished." (Ib., sec. 358.)

Statutes which violate the plain and obvious principles of common right and common reason, are null and void." (Ham v. McLean, 1 Bay, 98.)

The special act of the Legislature, under review, was not the "law of the land," as defined by Chief Justice Hemphill, in Janes v. Reynolds, 2 Tex., 251.

I invite special attention to the late valuable work of Cooley on Constitutional Limitations, page 351.

ROBERTS, CHIEF JUSTICE.—The defendants in error recovered a judgment establishing their right to the assets and title-papers in the hands of the State treasurer, belonging to and turned over from the estate of John C. Clark, deceased, whose estate was administered in the county of Wharton.

There is no assignment of error that the verdict was not supported by the evidence, in finding that defendants in error were the heirs of John C. Clark, and that the effects of said estate had been turned over to the treasurer of the State, by the administrators of said estate, on the 20th day of September, 1866, under an order of said court, as directed by an act of the Legislature of the State of Texas, of the 15th of November, 1864. (Paschal's Dig., art. 3676.)

This act provides, that when property under administration will escheat for the want of heirs, the County Court shall order the administrator to sell all of the property, who, after selling it, taking notes and mortgages, shall close the administration, and turn over to the treasurer of the State the assets thereof, who shall collect the same, as other debts due by debtors to any other creditor. The petition was filed on the 5th day of February, 1867, after which the treasurer appeared and answered.

The venue was changed, by order of the presiding judge, from Wharton to Fort Bend county, where the judgment was rendered in favor of the defendants in error.

The first error assigned by the plaintiff in error is, that "the venue was improperly changed to Fort Bend county, and the District Court of the latter county had no jurisdiction."

The only entry in the record relating to the change of venue, is as follows: "April 7, 1871; motion to file depositions, *nunc pro tunc,* according to date of receipt, granted; and ordered that the clerk will so file motion to consolidate this suit with Nos. 765 and 789. Motion overruled. The presiding judge being disqualified, the venue of the case is changed to Fort Bend county;" and directed that the records and papers therein be transmitted to the clerk of the District Court of Fort Bend county.

It may well be considered, that the remedy was given to bring a suit in the county where the administration was taken out, subject to the general law, giving the right to change the venue; and the disqualification of the judge is one of the

grounds specified in the Constitution of 1869, and no exceptions were taken at the time to the manner in which it was done.

The second error assigned is, that "the District Court of Fort Bend county erred in retaining jurisdiction after the passage of the special act of 1871, and in overruling application for change of venue thereunder."

The facts relating to this assignment are, that on the 19th day of May, 1871, the Legislature passed an act providing "that the suit of Mildred Ann Wygall *v.* The State of Texas, pending in the twenty-first. judicial district in the county of Fort Bend, be and the same is hereby changed to the county of Travis, in the twenty-seventh judicial district;" and further directing the judge of the twenty-first district, upon application of the attorney general of the State, or his legal representative, to change the venue of said suit. (Gen'l Laws of 1871, p. 109.)

In pursuance of this statute, and upon request of the Governor of the State, the attorney general requested the district judge of the twenty-first district to change the venue of the case named in the act, as therein indicated, by written communication dated 23d of July, 1871, at attorney general's office. These requests and the law were read in open court by the presiding judge, who stated that he had received them by special messenger from the attorney general; and the attorneys for the State, there present, moved the court to change the venue, as it appears by bill of exceptions; whereupon defendants in error filed their objections at length against the change of venue, which were sustained, on the 11th day of July, 1871, upon the ground that the law directing a change of venue was contrary to the Constitution of the State; and then and there the court proceeded to the trial of the case in the District Court of Fort Bend county, on the same day, to wit, the 11th day of July, 1871. A bill of exceptions was taken, and filed, to the ruling of the court upon this application, which is found in the transcript.

This exception presents the question, whether or not the Legislature has power to pass a special law for the change of venue in a particular suit of this kind.

The general rule is, that the Legislature may, by law, change, modify, or otherwise regulate the remedy, provided a substantial remedy is left for the assertion of a right, and that there is no vested right in a particular remedy. (DeCordova v. The City of Galveston, 4 Tex., 470; Cooley's Const. Lim., 361.)

It has been held, in Maryland, under this general doctrine, that the right of appeal in a particular case, which had been lost by the lapse of time, might be revived by a special statute. (Prout v. Berry, 2 Gill., (Md.,) 147; State v. N. C. R. R. Co., 18 Md., 193.) The contrary has been decided in Maine. (Lewis v. Webb, 3 Me., 298.)

In this case, there are assets to the amount of over one third of a million of dollars, turned over into the treasury of the State, under the laws relating to the administration of estates of deceased persons. A suit has been instituted against the treasurer for them, in the county where the administration had been closed, and removed by a change of venue to another county. This suit is against the treasurer, as an officer of the Government, and not individually; and therefore it is, in effect, a suit against the State, which has been permitted to be brought under a general law applicable to such a case. Being a large amount, other suits may be brought by other persons, claiming to be heirs of the deceased. Has the Legislature no power to protect the interest of the State, by requiring this suit, as well as all others that may be brought, to be removed to the District Court at the State capital, where it may be attended to by its officers there, and where, from the number and character of the population of Travis county, there may be greater security of a proper verdict? This is a question of legislative power; and, though it might be used oppressively on the other hand,

the lack of such a power might result in the perpetration of the most flagrant injustice.

The effects of this estate, turned over to the treasurer by the administrators, occupy the same position as property that has escheated to the State by regular proceedings, instituted by the district attorney under the law regulating escheats. Whether in the treasury of the State by one proceeding or the other, heirs may sue for it, under the permission of the laws. (Paschal's Dig., arts. 3671, 3676.)

By the default of the parties claiming to be the heirs of the intestate, in not coming forward during the administration of the estate, and seeking a distribution of the effects, and contesting, if necessary, their right with any other adverse claimants, " in the due course of the law of the land," the State has had to assume an important trust, in taking charge of and in becoming responsible for it to those who may be able to show themselves entitled to it, in the special remedy given to them substantially against the State for the recovery of the property from the State's constitutional depository, where it has been placed; and when it is found that the general rules prescribed for the administration of this trust, in any particular case, are inadequate, the State, by its Legislature, should have a power, commensurate with its assumed duties and responsibilities, to make the remedy complete by a special law, if necessary, for the protection of the just rights of others or the security of its own. This is not a suit between equals—individual members of society—as between whom the Government must stand impartial in awarding to them their rights according to the general laws of the land. On the contrary, the State is a party substantially, and can be sued only on its own terms, whether prescribed generally or specially.

Pursuant to the prayer of the petition, the judgment in this case requires the comptroller to draw his warrant upon the treasurer for the assets in his custody, which is, in form, the usual mode of reaching the funds of the State. It may be

said that they are only held in trust, and will only escheat finally to the State in the absence of the proper heirs appearing to claim them. So the State holds all of its other property in trust, either for public use, or for those who, under the laws, may be entitled to claim it in the mode prescribed. This results from the principle that a sovereign State can be sued only on its own terms. The Legislature is not limited in the mode of prescribing the terms, whether by general or special laws, unless some constitutional limitation of its power can be found prohibiting it from passing such laws for the protection of the State.

The constitutional limitations that were invoked in the numerous exceptions taken to this special law of the Legislature, directing a change of venue in this case from Fort Bend to Travis county, are not applicable in this case, where the State is regulating the remedy in a suit against itself, even if it should be held that they or any of them were applicable in restraining the Legislature from passing such a law in regulating the remedy, as between individual litigants in ordinary suits in courts. With the policy or motive of passing such a special law in this case, we have nothing to do. As it presents itself to the court it is a question of power in the Legislature. The amendments to the Constitution, January 18, 1874, prohibiting the Legislature from passing such a special law, may be regarded as some evidence, though not conclusive, that the Legislature did not regard its power to do it restrained by any other provision of the Constitution. (Acts of 1874, p. 235.)

The objection, that the names of the parties to the suit were misdescribed in the act, was not made at the trial below. On the contrary, the parties and the court understood it to apply to this particular suit, and no notice was taken of the fact that it was styled in the act, a suit against the treasurer. It may fairly be concluded by this court, from the description of it in the act, that this was the suit the venue of which was intended to be changed from Fort Bend to Travis county.

The fourth assignment of errors is as follows, to wit:

"The law under which this suit was instituted was expressly repealed before rendition of judgment; and such repeal operated *ipso facto* as an abatement."

The judgment was rendered in Fort Bend county District Court, on the 11th day of July, 1871. The suit was brought on the 5th day of February, 1867, under the law of 20th March, 1848, section 93, (Paschal's Dig., art. 1354,) as amended by the act of 15th November, 1864, and not under the law of escheat of 20th March, 1848, (Paschal's Dig., art. 3671.)

The law regulating the estates of deceased persons, passed in 1848, was repealed by the law passed on that subject by the act of 1870, with certain reservations, (Paschal's Dig., art. 5770,) which substituted act does not contain the same provisions, in terms, as provided in the acts of 1848 and 1864, as above quoted, in relation to the disposition and recovery of funds that have been turned over to the treasurer for want of heirs or legatees appearing.

This statute, however, does make provisions in such cases for the property to be sold, and the money collected and turned over to the treasurer of the State, from time to time, by the administrator, until he has turned it all over, as provided in the act of 1848, (Paschal's Dig., arts. 5755 to 5763;) and it provides further, that "where a person, entitled as distributee, shall appear after the funds have been paid into the State treasury, the same proceedings shall be had to determine the right to the money in the treasury as if he had appeared before the property was sold for that purpose; and the order of the court establishing the right of a distributee thus appearing, and the share to which he is entitled, shall be sufficient authority for the State treasurer to pay over the amount."

The mode of determining who is entitled to the estate and the share of each is provided for in this law, by citing the parties interested, and an adjudication of the District Court in

which the estate is administered. (Paschal's Dig., arts. 5746 and 5605.)

It will be perceived that this law of 1870, which was the law relating to estates in force when the judgment was rendered, on the 11th day of July, 1871, did not provide for a suit against the treasurer, in order to reach assets in the hands of the treasurer that had been turned over for want of heirs, distributees, legatees, nor even for the money so turned over to the treasurer, but instead thereof, it contemplated a proceeding in the District Court where the estate is, or was administered, the same as that upon an ordinary distribution of an estate, upon the application of a party interested; and the judgment of the court, in that proceeding, should be authority upon which the treasurer of the State should pay the amount adjudged to the applicant. There were difficulties, in applying this law to this case, on account of what had already been done, conformably to previous laws. The estate had been closed, and the assets, such as notes and mortgages, had already been turned over to the treasurer, under the directions of the act of 1864, and were not by him held in the shape of money, as in this act it was contemplated it should be, turned over to him, unless he had collected it, which is not stated in the pleadings. Supposing, then, for the present, that this suit was properly brought against the treasurer, and for the recovery of the notes and mortgages, being assets, would the change of the law, as herein described, by the act of 1870, in which no suit was authorized to be brought against the treasurer, as was provided in the act of 1848, have the effect to abate this suit, which was so properly brought before the act of 1870 was passed? The act of 1870 was, from its terms, prospective in its operation, and made no reference whatever to suits that had already been brought against the treasurer by the distributees of an estate, as authorized by the act of 1848. It is evident there was no express intention on the part of the Legislature to discontinue such a suit. The authorities that have been referred to as sustaining the

doctrine, that this suit would thereby abate, have reference mostly to penalties, or penal statutes, or to rights conferred by the Government not completely vested or perfected. (Dwarris on Statutes, 538; Wall v. The State, 18 Tex., 682; Norris v. Crocker, 13 How. U. S. Rep., 429; Ins. Co. v. Ritchie, 5 Wall., 541; Ex parte McCardle, 7 Wall., 506.)

In this matter, our laws do recognize in the heirs or distributees a substantial vested right of property in the effects held in trust for them by the State, provided only they can and do establish it in the manner prescribed by law; and therefore a remedy once given, and adopted by a suit in court, could not entirely be taken away without the violation of a vested right in the heirs or distributees.

It is true that, by their default in not appearing during the pendency of the administration, the State has taken charge of the property, and it may become the property of the State, as escheated property, upon their continuing to fail in applying for and establishing their right to it; still, it is not in the nature of a bonus or privilege granted, the right to which is only perfected by suit; but if they sue and recover at all, it is on the principle that they have a vested right of property before they sue for it, which they may recover by the suit prescribed by law. The remedy, therefore, which has been given to recover it, though subject to modification pending a suit, should not be abrogated entirely. (De Cordova v. City of Galveston, 4 Tex., 470; Paschal v. Perez, 7 Tex., 348; Bronson v. Kinzie, 1 How., (U. S. Rep.,) 318.)

The law of 1870 expressly prescribes that "no remedy to which a creditor is entitled, under the provisions of the laws heretofore in force, shall be impaired by this act." (Paschal's Dig., art. 5771.) This shows that the Legislature did not intend to cut off from a remedy those having rights under previous laws, who were pursuing the remedy previously authorized, though it cannot be said that it literally applies to the plaintiffs in this suit. Furthermore, the Legislature recognizes this suit after the passage of the law of 1870, by a spe-

cial law, requiring a change of venue in it, which would have been useless, if it had been thought that no suit of the kind could be maintained. These enactments, though they may not be a warrant for maintaining the suit, are presumptive evidence in favor of its not having been intended to take away the remedy that had been pursued in the bringing of this suit.

The third assignment of error is as follows, to wit: "The court below erred in entertaining suit for the assets, and in rendering judgment for the delivery to the defendants in error of the uncollected assets." Under this, reference is made to the act of 20th March, 1848, which provides, that "whenever any funds of an estate shall have been paid to the treasurer of the State, under the provisions of this act, any heir, devisee, or legatee of such estate, or their assignees, or either of them, may recover the portion of such funds to which he or she would have been entitled, if the same had not so been paid to the treasurer." It provided, in the same section, for a recovery of such funds, and any title papers that may have been deposited with the comptroller, by a suit in the District Court of the county in which the estate was administered. (Paschal's Dig., art. 1354, sec. 93.) This act provided that the estate should remain in the hands of the administrator, in such cases, until all of the property was sold, and the debts for the sale thereof should be collected, and that the funds, in money, should, from time to time, be paid to the treasurer of the State, and to be so continued until all the available means of the estate had thus been converted into money, and turned over to the treasurer. (Art. 1351, sec. 90.) The act of the 15th November, 1864, changed this mode of proceeding in such cases, by requiring all of the property of the estate to be sold by the administrator, and the notes and mortgages taken therefor to be immediately turned over to the treasurer of the State, under the designation of "assets of the estate," who was authorized to collect the same in gold or silver, as any other creditor

under the laws of this State. (Paschal's Dig., art. 3676.) The act of 13th November, 1866, authorized suits to be brought in the name of the State. (Genl. Laws, p. 236, sec. 3.) The act relating to escheats, passed 20th March, 1848, also provides for a suit for money deposited with the treasurer as escheated, by an heir or legatee, in the county where the property was sold; and upon the right being established, the judgment shall direct the comptroller to issue his warrant for the same. (Paschal's Dig., arts. 3671, 3672.) Notice to district attorney, not to treasurer, was required under this law.

The petition alleges that the property of said estate was sold, notes and mortgages therefor taken, and by order of the County Court, in February, 1863, and afterwards, in pursuance of the act above quoted, of the 15th November, 1864, the administrators, by order of court, turned over the assets, notes, and mortgages to the treasurer of the State; and with the petition is filed an exhibit of a receipt of the treasurer, of the 20th of September, 1866, for said assets, amounting to $384,428.12, as shown by the list receipted for, which is certified to as having been filed in records of the County Court of Wharton county in said estate, being the assets sued for in this action.

Both the laws regulating the estates of deceased persons and the law regulating escheats, provide for a suit for the "funds," and not for the "assets;" that is, for the notes and mortgages turned over to the treasurer. By an examination of the different provisions of those statutes, it will be found, without any sort of doubt, that the "funds" to be sued for is money in the hands of the treasurer, wherever that word is used. The statute of 1864, which provided for the turning over of the "assets"—that is, the notes and mortgages—after the property of all sorts had been sold, provided also for the collection of those debts, by the treasurer, by suits or otherwise, as in collecting debts by any other person; and the act of 1866 provided for the bringing those suits in the name of the State. These laws were passed, and in force, while the

act of 1848 was still in force, expressly authorizing heirs or distributees to bring a suit against the treasurer for the "funds" (meaning the money) in his hands. Effect may have been given to them by suing the treasurer to establish the right, and for the money collected and to be collected by him. The comptroller, in drawing a warrant, and the treasurer, in paying, must do it under and in accordance with the terms of a law authorizing it; and there is no law authorizing the treasurer to pay out or deliver the notes and mortgages, but, on the contrary, there is a law directing him to collect them, and after that is done by him, then he can readily find a law authorizing him to pay out the money thus collected, to the person entitled to it, by virtue of a judgment rendered against him for it, under the law authorizing the suit for the money. The treasurer, as such, cannot be bound by a judgment of the court for that which he can find no authority to do, by the laws relating to and regulating his duties as an officer of the Government. He does not hold this property in trust, to be delivered to any person who may establish, by a judgment, his beneficial interest in it, but in trust, to be held until he can part with it according to the terms of some law which authorizes or directs him to part with it. This is in accordance with his duties as the custodian of the State treasury, in which capacity he is possessed of the assets, and not as an individual depositary of trust property, who may be compelled by the judgment of a court of equity to deliver it to one who has recovered a judgment for it. Therefore, a suit should not have been brought, and judgment recovered, for that which he had no authority of law, as an officer, to deliver, but for that which he had such authority, which was the money in his hands, collected, and to be collected.

The key that unlocks the State treasury is an act of the Legislature, directing the thing to be done which is demanded, and not the judgment of a court, founded on equitable considerations, reaching beyond and changing the terms of the law, in the disposition of property.

30

There is no question raised upon the issue of the heirship of the plaintiffs, which was established by the verdict of the jury.

The statement of facts does not embrace the list of assets; but as it is made an exhibit in the petition, and there was no question about its correctness, or about the assets having gone into the hands of the treasurer, as alleged, no notice need be taken of it in this court.

Upon the error of the court in overruling the motion to change the venue from Fort Bend to Travis county, in pursuance of the special law, a majority of this court agree upon a reversal of the judgment.

Upon the other points in the case, this is only the opinion of the Chief Justice, except that there is no disagreement as to the change of venue from Wharton to Fort Bend county.

REVERSED AND REMANDED.