### R. M. THOMSON V. A. J. BAKER.

#### Decided November 23, 1896.

1. Jurisdiction Supreme Court—Mandamus.

   Under art. 946, Rev. Stats., the Supreme Court has original jurisdiction to issue writ of mandamus to the Commissioner of the General Land Office. (P. 166.)

2. Railroad Land Grant—Certificates—Repeal of Law.

   The Act of April 22, 1882, which repealed all laws granting lands and "land certificates" for the construction of railways, had the effect, not only to deprive railroad companies of the right to earn lands in the future, but to take from the Commissioner of the General Land Office all authority to issue them certificates already earned under previous laws. (Pp. 166, 167.)

3. Constitutional Law—Repeal of Laws Giving Remedy Against the State.

   A State may be sued only by its consent and may repeal a law authorizing such action even after suit brought: so a party who contracts with the State must be

deemed to have done so with a view to the power of the State, by a repeal of the executory provisions of the law existing at the time the obligation is entered into, to compel him to come directly to the Legislature for the enforcement of his. rights obtained under the contract. (P. 169.)

4. Same—Right to Land Certificates.

It was within the power of the State to repeal the law authorizing the Commissioner of the General Land Office to issue to a railway company certificates for land earned under Ch. 12, Title 84 of the Rev. Stats. of 1879 and the company was not protected from such action by any constitutional provision and had no right, after such repeal, to a writ of mandamus to compel the Commissioner to issue such certificates,—its remedy being by application to the Legislature. (Pp. 167, 169.)

ORIGINAL PROCEEDING by petition by Thomson to Supreme Court for writ of mandamus to Baker, the commissioner of the General Land Office, to compel him to issue certain land certificates. The facts appear in the opinion.

*Rector, Thomson & Rector.* for plaintiff.—The railroad company having earned the certificates prior to the repeal of the law prohibiting the further issuance of the certificates, of date April 22, 1882, and the Governor having passed on the existence vel non of the facts authorizing the issuance of said certificates, and having decided in favor of the railroad company, and having certified his action to the Commissioner of the General Land Office, with direction to issue the certificates, the company had a prior vested right in said certificates; and said act was, as to said right, an absolute nullity, and the same is as if no such law was ever passed. Art. 1, sec. 10, Con. U. S.; Art. 1, sec. 16, State Con.; Hartman v. Greenhow, 12 Otto (102 U. S.) 672.

This is not a suit against the State. It is not a suit to establish a right to the certificates, but a suit to compel the Commissioner of the General Land Office to issue the evidence of that right, viz., the certificates themselves. The State has already granted the right, and the railroad having complied with the terms of the grant, is entitled to receive the evidence of that right. That the railroad was entitled to receive the certificates, having complied with the law, was conceded by the Governor by his approval of the engineer's survey and by his certificate to the Commissioner of the Land Office, directing the issuance of the 872 certificates for 640 acres each. The statutes made the Governor the sole judge of all the facts which would entitle the company to the certificates. The ministerial duty of the commissioner to prepare and issue the certificates alone remained to be done, and this ministerial duty we seek in this proceeding to enforce. That the certificates might be laid on public domain and that the State might be interested adversely, cuts no figure in this controversy.

*M. M. Crane,* Attorney General, and *H. P. Brown,* assistant, for defendant, on the proposition that this was a suit against the State, cited and discussed Hall v. Taylor, 71 Texas, 212. In that case it was held that the State had a direct pecuniary interest in the suit. In this case the same

conclusion is inevitable, because if the certificates are issued as prayed for, they might be located on any land that may be vacant; and, to the extent of the value of eight hundred and seventy-two sections of land, the State is directly interested. It is a plain attempt to enforce an implied contract raised by the State offering in its Statute sixteen sections of land to the mile for building railroads, and the acceptance of this proposition by the railroad companies in constructing the roads. The implied obligation or contract is that the State will deliver to the railroad company the certificates. Indeed, it is little short of an express contract. It seems, therefore, that this suit cannot be instituted without legislative consent, whatever the rights of the parties may be. The authority to issue a mandamus against the Land Commissioner does not imply the authority to sue the State, because there are many cases in which a writ could properly issue against the heads of the departments where only private rights are involved, and yet it would be properly refused when it was practically against the State.

In addition to the case above cited, those to which it refers, particularly the following, support the proposition that this is a suit against the State, and that it cannot be maintained without legislative permission, which has not been procured: League v. DeYoung, 2 Texas, 500; Ex parte Ayres, 123 U. S., 443; Louisiana v. Jumel, 107 U. S., 711; Railway v. Randolph, 24 Texas, 317; Treasurer v. Wygall, 46 Texas, 447; Railway v. Groos, 47 Texas, 429; Auditorial Board v. Arles, 15 Texas, 75; Elliott v. Wiltz, 107 U. S., 720; Cunningham v. Railway, 109 U. S., 446; North Carolina v. Temple, 134 U. S., 22; McGahey v. Virginia, 135 U. S., 662; Belknap v. Shield, 16 Sup. Ct. Rep., 445.

Did not the repeal of the law authorizing the issuance of the certificates to railroad companies deprive the Commissioner of the right to issue same to all companies after the date that it was repealed, notwithstanding the road had been completed before the repeal? In other words, in the absence of statutory authority, can the Commissioner issue certificates to a railroad company or its assigns? This question seems to have been answered in the negative by this court. Chalk v. Darden, 47 Texas, 438; see also Salt Co. v. Saginaw, 13 Wall., 373.

GAINES, CHIEF JUSTICE.—This is an original proceeding in this court for a writ of mandamus to compel the Commissioner of the General Land Office to issue certificates for 872 sections of land claimed to have been earned by a certain railroad company known successively as The Tyler Tap Railroad Company, The Texas & St. Louis Railroad Company and The Texas & St. Louis Railroad Company of Texas, under chapter 12 of title 84 of the Revised Statutes of 1879. It is alleged in the petition that, before the repeal of the law, the company had constructed 54 miles and 2640 feet of railroad, and that, on April 10, 1882, the then Governor, after an inspection and report by an engineer appointed by him, certified the fact of the completion of the road and that the com-

pany were entitled to receive 872 sections of land therefor. It is also alleged, that application was made to W. C. Walsh, at that time Commissioner of the General Land Office, for the certificates, but that before they could be prepared and issued the Legislature "passed a general law forbidding the further issuance of land certificates to railroad companies. for the building of railroads in Texas," and that thereupon the Commissioner refused to issue the same. It is further averred that each successive Commissioner had likewise refused to execute and deliver the certificates. The company having been placed in the hands of a receiver, the petitioner was appointed as alleged "special master commissioner to apply for and demand of the proper State authorities to deliver to him the said 872 land certificates."

The Attorney General who appears for the respondent, has filed general and special demurrers to the plaintiff's petition, upon the following grounds among others:

1. That the Legislature has not sufficiently "specified" the cases in which this court is authorized to grant the writ, within the meaning of that term as employed in amended section 3 of article 5 of the Constitution, and that therefore this court has no jurisdiction of the case; and

2. That the petition does not show a case for the grant of the writ.

The first question is settled against the respondent by the former decisions of this court. Pickle v. McCall, 86 Texas, 212; McKenzie v. Baker, 88 Texas, 669; DePoyster v. Baker, 89 Texas, 155, (34 S. W. Rep., 106).

But we are of opinion that the facts stated in the petition are not sufficient to warrant the issue of the writ of mandamus against the respondent. The determination of the question depends, as we think, upon a proper construction of the act of the Legislature of April 22, 1882, referred to in the petition, entitled "An Act to repeal all laws granting lands or land certificates to any person, firm, corporation or company, for the construction of railroads, canals and ditches." The act reads as follows:

"Section 1. Be it enacted by the Legislature of the State of Texas, That all laws or parts of laws now in force granting lands or land certificates to any person, firm, corporation or company for the construction of railroads, canals and ditches, be and the same are hereby repealed.

"Sec. 2. The fact that the public domain subject to location by the owners of these certificates has been exhausted creates an imperative public necessity and an emergency requiring the constitutional rule that bills. be read on three several days in each house be suspended, and the same is therefore suspended; and that this act take effect and be in force from and after its passage, and it is so enacted."

It is not quite clear to our minds whether the Legislature intended merely to repeal all laws in so far as they authorized railroad companies to earn lands in the future; or whether it was also intended to repeal all laws upon the subject in toto, and thus to take from the Commissioner of

the General Land Office all authority to issue certificates already earned under the provisions of the law. But the article of the Revised Statutes in force at the time the construction was completed for which the certificates are claimed, and which conferred the right to earn the lands, simply provided that the railroad companies of the State should be entitled to acquire lands by the construction of their roads. The provision reads as follows:

"Article 4267. Any railroad corporation heretofore chartered or which may be hereafter organized under the general laws shall, upon the completion of a section of ten miles or more of its road be entitled to receive, and there is hereby granted to every such railroad, sixteen sections of land for every mile of its road so completed and put in good running order."

By the succeeding articles it was provided that, upon an inspection and a report by an engineer appointed by the Governor of the fact that the section of road had been completed and the Governor's certificate to that effect, the Commissioner of the General Land Office should issue the certificates for the lands so earned under the law. We think, therefore, if the purpose had been merely to repeal the law in so far as it gave the right to earn lands in future, that that intention would have been fully expressed by repealing all laws which provided for the grant of lands; and that by the language "all laws * * * granting lands or land certificates to any person, or firm, corporation or company for the construction of railroads * * * be and the same are hereby repealed" found in the act in question, the Legislature intended, not only to repeal the law which authorized railroad companies to acquire lands in future, but also to repeal so much of it as authorized the Commissioner to issue certificates for lands already earned under the law. A different construction would render the mention of certificates nugatory. The allegation already quoted from the petition that "the Legislature passed a general law forbidding the further issuance of land certificates to railroad companies," etc., seems to indicate that the petitioner places the same construction upon the act. That this was the intention of the Legislature is further evidenced, we think, by the emergency clause. The reason for giving the act immediate effect is that "the public domain subject to location by the owners of these certificates" had been exhausted. This tends to show, that the purpose was not only to forbid future acquisitions, but also to prohibit the issue of all certificates.

But, if it was the purpose of the repealing act to take from the Commissioner the power to issue certificates for land already earned under previous laws, the question suggests itself whether the Legislature exceeded its authority in attempting to withdraw that power. The Legislature can make no law impairing the obligation of a contract. This is prohibited both by the Constitution of the State and that of the United States. The State can be sued, but only by its consent. But it is authoritatively held, that although its laws may provide for a suit against it

for the enforcement of a contract entered into by it, it may repeal the
law authorizing the action, even after suit brought.  Beers v. Arkansas,
20 How. (U. S.), 527;  In re Ayers, 123 U. S., 443;  State v. Hill, 54 Ala.,
67;  Ex parte Alabama, 52 Ala. 231;  Board of Pub. Works v. Gannt, 76
Va., 455; Baltzer v. State, 104 N. C., 265; State v. Bank, 3 Baxt. (Tenn.),
395.

In Antoni v. Greenhow, 107 U. S., 769, the facts were that the Legis-
lature of the State of Virginia, in authorizing an issue of bonds, pro-
vided that the coupons should be receivable in payment of taxes due the
state, and also gave a remedy by suit for the enforcement of the right by
the holders of such coupons.  By a subsequent act so much of the act as
authorized a suit by the holder of the coupon to enforce his right to have
it received as payment of his taxes was repealed, and another remedy, evi-
dently not so efficacious, was substituted.  The court held the latter act
constitutional.  The chief justice who delivered the opinion of the court,
placed the ruling upon the ground that the latter remedy was adequate.
Justice Matthews delivered a separate opinion, in which he said:  "I
agree that the State of Virginia, by the act of 1871, entered into a valid
contract with the holders of its bonds to receive their coupons in pay-
ment of taxes; and that any subsequent statute which denies this right
is a breach of its contract and a violation of the Constitution of the
United States.

"But for a breach of its contract by a state no remedy is provided by
the Constitution of the United States against the state itself; and a suit
to compel the officers of a state to do the acts which constitute a per-
formance of its contract by the state is a suit against the state itself.

"If the state furnishes a remedy by process against itself or its officers,
that process may be pursued, because it has consented to submit itself to
that extent to the jurisdiction of the courts; but, if it chooses to with-
draw its consent by a repeal of all remedies, it is restored to the immunity
from suit which belongs to it as a political community, responsible in
that particular to no superior.

"I adopt as decisive of the present case the language of the Chief Jus-
tice, in expressing the opinion of the court in the cases of the State of
Louisiana v. Jumel, and Elliott v. Wiltz:  'When a state submits itself,
without reservation, to the jurisdiction of a court in a particular case,
that jurisdiction may be used to give full effect to what the state has, by
its act of submission, allowed to be done; and if the law permits coercion
of the public officers to enforce any judgment that may be rendered then
such coercion may be employed for that purpose.  But this is very far
from authorizing the court, when a state cannot be sued, to set up its
jurisdiction over the officers in charge of the public moneys, so as to con-
trol them as against the political power in their administration of the
finances of the state.'

"I do not, therefore, consider it necessary to enter upon the inquiry,
whether the remedy provided by the State of Virginia, by the act of 1882,

is effective and substantial compared with that which existed in 1871, when the bonds were issued. It is sufficient to say that it is the one which the state has chosen to give, and the only one, therefore, which the courts of the United States are authorized to administer." '

Three of the other justices concurred in upholding the latter statute, both upon the ground taken by Chief Justice Waite and that assumed by Justice Matthews. Two judges dissented. Thus it appears that a majority concurred in holding that the Legislature could take away the remedy altogether.

In League v. DeYoung, 2 Texas, 497, a similar question to that now before us was presented. The appellant in that case sought, by a suit in the District Court, to compel the district surveyor of the Galveston land district to survey a tract of land by virtue of a certificate that had not been recommended by the Traveling Board, and the validity of the act which established that board and required all certificates to be approved by it before they could be located was called in question, upon the ground that it impaired the obligation of the contract between the State and the holder of the certificate. But the court held the act valid. In their opinion the court say: "In this case the judgment of the court below ought to be affirmed for the following reasons:

"First, Because a mandamus is not a process that can be resorted to against a state, without her consent, and this is a suit, in effect, against the State, and conducted by no authority derived from the State; that it is an attempted evasion of the well established principle that the sovereign authority cannot be sued, in its own courts, without its express assent to such suit."

See also Hosner v. De Young, 1 Texas, 764; Peck v. Moody, 23 Texas, 93; Durrett v. Crosby, 28 Texas, 687.

In this case, the railroad company, under the law existing at the time the work was done, had no remedy for compelling the issue of the certificate. After some difference of opinion among the judges and some seeming conflict in the cases, it was ruled in Railway v. Gross, 47 Texas, 428, that the Commissioner of the General Land Office could not be compelled by the courts to issue railroad certificates. That decision so far as we are advised has never been overruled, and remained the law until the Legislature was authorized by the recent amendments to the Constitution to empower this court to issue a writ of mandamus against any officer of the State, except the Governor, and the statute was passed in pursuance of that power which conferred upon this court jurisdiction to issue the writ against such officers. So that the repealing Act of April 22, 1882, did not take away any remedy which the railroad companies had in the courts. It did take away the power of the Commissioner to issue the certificates, but this we think it competent for the Legislature to do. Certainly the law-making power might have appointed another officer or board of officers for the performance of the duty. Since the State cannot be sued without its consent and since as a general rule a party who

contracts with the State must look to the Legislature for performance· on part of the State, it would seem that he is deemed to have contracted with a view to the power of the State by a repeal of the executory provi- sions of the law existing at the time the obligation is entered into, to com- pel him to come directly to the Legislature for relief.

Holding that the Act of April 22, 1882, was intended to repeal the previous laws upon the subject which authorized either the acquisition of' lands by the railroads or the issue of certificates by the Commissioner of the General Land Office for lands previously earned, it follows that the respondent has no power to do that which we are asked to compel him to· do. The suit therefore must fail. Taylor v. Hall, 71 Texas, 206; State v. Sneed, 9 Baxt. (Tenn.), 472. The case is in striking contrast with that of Jernigan v. Finley, this day decided by this court, in which the duty, the performance of which was sought to be compelled, was expressly en- joined by the Legislature.

We do not find it necessary to decide whether, by construction of the road under the offer of the State, a contract was completed which the State could not annul. We merely hold that, if any legal obligation ex- ists, the remedy is with the Legislature.

For the reasons given, the writ of mandamus is refused.

*Writ refused.*