## STATE HIGHWAY COMMISSION OF TEX-AS et al. v. TENGG.

### No. 7919.

Court of Civil Appeals of Texas. Austin.

Feb. 15, 1933.

James V. Allred, Atty. Gen., and A. R. Stout, Asst. Atty. Gen., for appellants.

A. M. Felts, of Austin, and G. P. Morgan, of Austin, for appellee.

McCLENDON, Chief Justice.

Appeal from an interlocutory order over-ruling a motion to dissolve a temporary injunction issued on behalf of Edward Tengg against the state highway commission, its members and chief engineer, the state board of control, and its members.

Tengg was awarded the contract covering the electrical equipment and fixtures for the Highway building which was being constructed under the appropriation of Reg. Sess. 42d Legislature, 1931 (page 710, c. 286, § 1), which provided for joint action of the two departments in the planning and erection of the building. The controversy involved in the cause grew out of the following provision of the contract: "It is agreed that the Contractor and Subcontractor shall pay the current prevailing wage scale on all work or contracts or sub-contracts on the project, except as to common unskilled labor which shall be paid not less than thirty cents (30¢) an hour for actual time."

The order appealed from restrains the several defendants:

"From enforcing or attempting to enforce upon the plaintiff, the Eight Dollar per day wage scale for skilled laborers used in the progress of his work upon the new State Highway Building, now under construction, and from interfering with the plaintiff, Edward Tengg, in carrying on his work upon said building under the current prevailing wage scale, or from interfering with the plaintiff in the progress of his work, or from disorganizing or attempting to disorganize or cause dissatisfaction and dissention among his laborers directly, or from holding up or refusing to allow the plaintiff his estimates as per the terms of his contract; or from doing any other thing that would have the force and effect of compelling the plaintiff to pay said Eight Dollar per day wage scale, or any other wage scale above the current prevailing wage scale. * * *

"Said defendants may retain back, at all times, fifteen per cent of the contract price and enough additional funds of the contract price to pay any legal claims in writing that are duly presented, as provided by law. * * *

"Said defendants * * * shall do no act or thing that will have the force or ef-

fect in anyway of violating the terms of plaintiff's contract, or any part thereof. * * *

"Said defendants and departments and each of them shall do no act or thing that will in any event breach the terms of plaintiff's contract, or any part thereof, and they and each of them are enjoined from holding up or refusing to allow plaintiff his estimates, as per the terms of his contract, except as stated herein."

Appellants' contention in the main is that the suit is one in effect to enforce a contract against the state, which is not maintainable, and plea in abatement upon that ground should have been sustained. With the exception of that portion of the order relating to interference with appellee's laborers, which will be discussed later, we sustain this contention.

The general rule involved in appellants' contention is not questioned; but appellee contends that the suit here is one only against the officers of the state, to prevent illegal acts on their part; and that the state has no litigious interest in the controversy, since to constitute such interest "the State must be in a position to lose some money on the outcome of the suit, or suffer some inconvenience as a result thereof." The exact point which appellee makes in this regard is that, since the state has made a valid contract, at a stipulated price, secured by bond for its performance, "the State's money is not involved in the suit," and the case is not brought within the rule "that in order to constitute a suit against the State the suit must be one that imposes a liability against the State."

In the view we take of the case, it is not material whether the quoted provision of the contract is valid. Appellee's contention that it is invalid is predicated upon the holding in Christy-Dolph v. Gragg (D. C.) 59 F. (2d) 766. The question there concerned the validity of a criminal statute; which the decision held invalid for uncertainty. Here we have an express provision of a contract, voluntarily entered into by both contracting parties.

The verified answer of appellants was to the effect that at the time the bids were opened the board and commission (due to previous complaints against appellee regarding his treatment of skilled and unskilled labor) made it known to him "that if his bid was to be accepted or if said contract was to be awarded to him that he must at all times pay the prevailing wage scale for all laborers except as to common unskilled labor, which was to be paid for," at not less than 30 cents an hour; that the board and commission were assured that he would go even further and pay the "prevailing union wage scale * * * in the City of Austin,"

and appellee filed with the board and commission an affidavit to that effect; that the contract was awarded upon these representations, which "were a part of and the controlling consideration in the awarding and execution of said contract"; that appellee has not carried out said provision, but has breached and violated it; that he has filed affidavits with the commission stating that he has complied with the contract, when in fact "he has in operation a system among the men working under him whereby they are paid a certain amount for a full day's work; but that said plaintiff requires said laborers to sign a statement in writing stating that they worked only a part of the day, when in truth and in fact, they have worked the entire day"; that under this system appellee pays his skilled laborers only half the sum to which they are entitled under the contract.

As stated above, it is not essential to the issues before us whether the contractual stipulation in dispute is legally enforceable. The issue here is whether its enforcement can be had through the courts. This question is one of application of well-established general principles to the particular situation before us; and it would not be profitable, we think, to attempt a review and analysis of the authorities. Extensive case notes upon the subject will be found in 44 L. R. A. (N. S.) 189 et seq., and 42 A. L. R. 1464 et seq. Texas cases upon the subject are collated on page 1468 of the latter.

The rule which controls here is stated by our Supreme Court (Mr. Justice Pierson writing) as follows: "A suit against officers of a state, to require them to perform acts which constitute a performance of a contract by the state, is in effect a suit against the state itself. A suit against officers of a state, the purpose or effect of which is to establish the validity of a contract of the state, or to enforce through them the performance of a contract of the state, or to require acts to be performed by them which would impose contractual liabilities upon the state, is a suit against the state. Thomson v. Baker, 90 Tex. 163, 38 S. W. 21; Jernigan v. Finley, 90 Tex. 205, 38 S. W. 24; League v. De Young, 2 Tex. 497; Hosner v. De Young, 1 Tex. 764; Treasurer v. Wygall, 46 Tex. 447; Antoni v. Greenhow, 107 U. S. 769, 2 S. Ct. 91, 27 L. Ed. 468; 36 Cyc. 916; 25 R. C. L. p. 413, § 50." Herring v. Bank, 113 Tex. 264, 253 S. W. 813, 814.

The following language by the Court of Appeals of New York is peculiarly apropos the instant controversy: "The State cannot be compelled to proceed with the erection of a public building, or the prosecution of a public work at the instance of a contractor with whom the State has entered into a contract for the erection of a building or the performance of the work. The State stands,

in this respect, in the same position as an individual, and may at any time abandon an enterprise which it has undertaken, and refuse to allow the contractor to proceed, or it may assume the control and do the work embraced in the contract, by its own immediate servants and agents, or enter into a new contract for its performance by other persons, without reference to the contract previously made, and although there has been no default on the part of the contractor. The State in the case supposed would violate the contract, but the obligation of the contract would not be impaired by the refusal of the State to perform it. The original party would have a just claim against the State for any damages sustained by him from the breach of the contract, and although the claim could not be enforced through an action at law, the remedy by appeal to the legislature is open to him, which can, and it must be presumed will, do whatever justice may require in the premises. This remedy is the only one provided in such a case, and this is known to the party contracting with the State, and the courts cannot say that it is not certain, reasonable and adequate." Lord v. Thomas, 64 N. Y. 107.

It seems plain to us that the proceeding is one in which the action of the state's contracting agencies in the performance of a state contract is sought to be controlled and directed through the processes of the courts. The propriety of the action of the state officials is beside the question. The only proper forum for relief is the Legislature, unless and until that body should give its consent to litigate the issues in the courts.

■ While the state agencies have the power to direct the manner of performance of the contract, even to the extent of discontinuing the work in its entirety, we do not think they can lawfully interfere directly with appellee's laborers. We therefore think proper that portion of the order temporarily enjoining appellants from "disorganizing or attempting to disorganize or cause dissatisfaction and dissention among his (appellee's) laborers directly." That portion of the order is therefore left undisturbed.

■■ There is an allegation in the petition to the effect that appellants "have threatened to, and are in fact preparing to pay said workmen direct and deduct the amount so paid * * * from plaintiff's pay." It is not stated in what manner this threat is proposed to be carried out. The appropriation for the highway building is from the state highway fund, which can only be drawn upon through treasury warrants. Appellee has a direct interest in this fund to the extent of the amount of his contract, and can prevent a diversion thereof to others not legally entitled thereto. Terrell v. Middleton (Tex. Civ. App.) 187 S. W. 367 (error refused); Sherman v. Cage (Tex. Civ. App.) 279 S. W. 508; Johnson v. Ferguson (Tex. Civ. App.) 55 S.W.(2d) 153. The trial court's order does not specifically deal with this phase of the case. In so far as it may by implication be construed as prohibiting issuance of such warrants, it is left undisturbed.

■■ There is one other matter to which we direct attention. Article 5, § 3 of the Constitution, in part reads: "The legislature may confer original jurisdiction on the supreme court to issue writs of quo warranto and mandamus in such cases as may be specified, except as against the governor of the state."

R. S. art. 606 reads: "Mandamus suits may be brought in the Supreme Court against the Board [of Control], but no other suit shall be brought against the Board of any other character, except in the District Court of Travis County. No temporary injunction shall ever issue against the Board except upon notice and hearing."

We think the original jurisdiction thus conferred upon the Supreme Court is exclusive; and jurisdiction is denied any other court to compel affirmative action of the board. The trial court's order is in form restraining only; however, that portion of it which enjoins appellants "from holding up or refusing to allow plaintiff his estimates, as per the terms of his contract, except as stated herein," is tantamount to a mandate that estimates be allowed; and to the extent it affects the board is within the exclusive jurisdiction of the Supreme Court.

Except in the above respects in which the order appealed from is left undisturbed, the temporary injunction is dissolved; and the cause is remanded to the trial court for further proceedings not inconsistent with the views above expressed. Costs of appeal are taxed against appellee.

Temporary injunction in part undisturbed; in part dissolved. Cause remanded.