## J. A. HERRING ET AL. v. HOUSTON NATIONAL EXCHANGE BANK.

No. 3969.    Decided June 30, 1923, November 15, 1923.

(253 S. W., 813.)

**1.—Suit Against State.**

A suit against officers of the State to require them to perform acts which constitute a performance of a contract by the State is in effect a suit against the State itself. Accordingly, a suit against the Board of Prison Commissioners of the State of Texas upon notes alleged to have been executed by the Board in its official capacity for the use and benefit of the State, to establish their validity or amount, or to enforce their payment, is a suit against the State. (Pp. 269, 270).

**2.—Appropriations—Operation of Penitentiary System—Indebtedness on Contract by Board.**

The language of the general appropriation bill (Act of Sept. 2, 1921. Laws 1st and 2nd Called Sessions, 37th Leg., p. 214), appropriating all proceeds of the Penitentiary System to its maintenance and support and providing that out of such fund "shall also be paid any indebtedness of said system not otherwise provided for by specific appropriation," can not be held to prove up, establish, or validate any specific indebtedness against the system, especially if in dispute. It could only apply to acknowledged or adjudicated indebtedness. (Pp. 270, 271).

**3.—Same.**

As bearing on the effect of the appropriation bill as to validating this existing contract of the Penitentiary Board, attention is called to a resolution of the Legislature adopted prior to the passage of that bill, questioning the validity of the contract and recommending suit by the Attorney General to set it aside. (P. 270).

**4.—Mandamus—Establishment of Disputed Claim.**

It was the duty of the Penitentiary Board to pay the claim of plaintiff on his contract out of the appropriation of proceeds of the Penitentiary System to such payment only where such liability was an acknowledged one or was judicially established. It was incumbent on plaintiff to so establish his debt before he could have mandamus against the Board to require them to so pay it. (P. 271).

**5.—Appeal Bond—Heads of State Departments—Penitentiary Board.**

The Board of Prison Commissioners of the State of Texas constitutes the head of a department of the State, such as, by Article 2105, Revised Statutes, when prosecuting or defending in any action in their official capacity may appeal without giving bond. The right there conferred is not limited to executive departments such as are named in Article 4, Section 1 of the Constitution. (Pp. 271, 272).

**6.—Same—Statutory Construction.**

The mention specially, in Article 2105, Rev. Stats., of the Railroad Commission as a department of State Government of which the officers may appeal without giving bond does not require that other officers, such as the Prison Commissioners, falling within the meaning of heads of departments of the State as there used should be excluded from its benefits. The language should be liberally construed. (P. 273).

Error to the Court of Civil Appeals for the First District in an appeal from Harris County.

The suit was by the Houston National Exchange Bank against J. A. Herring, Sanford Dean and Walker Sayles, constituting the Board of Prison Commissioners of the State of Texas, for recovery upon contract and for mandamus. Plaintiff recovered and appeal by defendants was dismissed for want of an appeal bond (244 S. W., 281). There had been a previous appeal from an order granting injunction, which was reversed (241 S. W., 534). From the judgment dismissing their appeal defendants obtained writ of error.

*W. A. Keeling,* Attorney General, and *W. W. Caves, Frank M. Kemp* and *L. C. Sutton,* Assistants, for plaintiffs in error.

The Board of Prison Commissioners of the State of Texas, and the officers constituting same, is the head of a Department of the State of Texas within the meaning of Article 2105 of the Revised Civil Statutes of 1911. Sec. 58, Art. 16 St. Con.; Art. 2105 R. C. S.; Art. 5502 R. C. S.; Chs. 1 & 2, Title 104 R. C. S. and amendments thereto; Betts v. Johnson, 96 T. 360 (73 S. W. 4); McFall v. State Board of Education, 101 T. 572 (110 S. W. 79); Cowell v. Ayers (Sup. Crt.) 220 S. W. 764; Middlekauf v. State Banking Board (Sup. Crt.) 242 S. W. 442; Stamps v. Tittle (Crt. Civ. App.) 167 S. W. 776; Matthaei v. Clark, 110 T. 114 (216 S. W. 856); Charlton v. Cousins, 103 T. 116 (124 S. W. 422); Adams Fish Market v. Sterrett (Sup. Crt.) 172 S. W. 1109; Board of Water Engineers v. McKnight (Sup. Crt.) 229 S. W. 301; Pickle v. McCall, 86 T. 212; State v. Hocker, 39 Fla. 477 (63 Am. St. Rep. 174).

An appropriation of the proceeds of all convict labor on farms and elsewhere, the proceeds of all manufactured products, all farm products, and all other proceeds of the penitentiary system and of all

other sources connected therewith, or so much thereof as may be necessary, for the maintenance and support of the penitentiary system, including buildings, farms and improvements, and repairs on same for the years ending August 31st, 1922, and August 31, 1923, out of which fund shall also be paid any indebtedness of said system not otherwise provided for by specific appropriation, as well as the expenses attached to conveying convicts to the penitentiaries and farms, is not and does not constitute an appropriation to pay certain particular alleged notes the payment of which has been expressly prohibited by the Legislature. Ch. 53, p. 172 (214) Gen. Laws, 1st C. S., 37th Leg. Resolution or adopted report of Penitentiary Investigating Committee, 1st C. S., 37th Leg., H. J., 1st C. S. 37th Leg., pp. 119-120, 121. S. J. 1st C. S., 37th Leg., pp. 77, 78, 80; Ch. 40, p. 88, Gen. Laws, Reg. Ses. 37th Leg. Ch. 63, p. 162, Gen. Laws, 1st and 2nd C. S. 36th Leg. Ch. 54, p. 215, Gen. Laws, 1st and 2nd C. S. 37th Leg.

A suit and judgment against the Board of Prison Commissioners of the State of Texas upon or to establish the validity or amount of certain alleged notes alleged to have been executed by the Board of Prison Commissioners in part payment for certain land or other property alleged to have been purchased by the Board of Prison Commissioners in its official capacity for the use and benefit of the State, and to enforce payment of same, is a suit and judgment against the State. Borden v. Houston, 2 Texas, 594; Bates v. Republic, 2 Texas, 616; Hosner v. DeYoung, 1 Texas, 764; Chevalier v. State, 10 Texas, 315; State v. Snyder, 66 Texas, 687, 18 S. W., 106; Treasurer v. Wygall, 46 Texas, 447; Auditorial Board v. Arles, 15 Texas, 72; Imperial Sugar Co. v. Cabell, (Civ. App.), 179 S. W., 83; State v. Elliott (Civ. App.), 212 S. W., 695; Antoni v. Greenhow, 107 U. S., 769; Louisiana v. Jumel, 107 U. S., 711; Murray v. Wilson Distilling Co., 213 U. S., 151; Ballaine v. Alaska Northern Ry. Co., United States Intervener (U. S. C. C. of App.), 259 Fed. Rep., 183; Hagood v. Southern, 117 U. S., 52; In Re Ayers, 123 U. S., 443; 36 Cyc., pp. 915-919; 25 R. C. L., p. 412, sec. 49, p. 413, Sec. 50; Herring et al. v. Houston National Exchange Bank, 241 S. W., 534.

*Hill & Hill,* for defendant in error.

The Prison Commission is not the ''Head of a Department of the State of Texas'' within the meaning of Article 2105, Revised Civil Statutes of 1911. Constitution of Texas, art. 2, sec. 1; Id., art. 4, sec. 1; Rev. Stats., Title 65, Chapter 1158; Rev. Stats. art. 4418a; McFall v. State Board of Education, 101 Texas, 572; Betts v. Johnson, 96 Texas, 360; Pickle v. McCall, 86 Texas, 212; Travis County v.

Jourdan, 91 Texas, 217; United States v. Mouat, 124 U. S., 303; United States v. Germain, 99 U. S., 508.

If the Prison Commission is the "head of a department" within the meaning of this language of the Statute, then certainly the Railroad Commission is also, Yet, the Legislature, by its own intepretation of the act in including the Railroad Commission in the Statute by Special Act, has declared that it does not construe the Railroad Commission as the "head of a department". This legislative interpretation must also be applied to the Prison Commission, and if the Railroad Commission is not the "head of a department", then the Prison Commission is not.

The judgment in this case is not a judgment against the State of Texas, but is only a judgment against the Prison Commission of the State of Texas, and the individuals composing the same. Jernigan v. Finley, 90 Texas, 211; In Re Ayers, 123 U. S., 443; Sloan Shipyards Corp. v. U. S. Shipping Board etc. Corp., (1922) 258 U. S., 549; United States v. Strang, 254 U. S., 491; Osborn v. Bank of U. S., 9 Wheaton, 738; Davis v. Gray, 83 U. S., 203; United States v. Peters, 5 Cranch, 115; United States v. Lee, 106 U. S., 196; Tindall v. Wessley, 17 Sup. Ct., 770, 42 L. Ed., 137, 167 U. S., 204; McComb v. United States, 264 Fed. Rep., 589.

MR. JUSTICE PIERSON delivered the opinion of the court.

This suit was brought by defendant in error, Houston National Exchange Bank, in the District Court of Harris County against J. A. Herring, Sanford Dean, and Walker Sayles, who constitute the Prison Commission of the State of Texas, to recover upon three promissory notes given by the Prison Commission to the Fort Bend Cotton Oil Company in part payment of the purchase price of three acres of land in Fort Bend County, with the cotton oil mill and machinery situated thereon, and to foreclose a mortgage lien upon said property. Also, defendant in error sought a mandamus against plaintiffs in error, the Prison Commission, to compel them to pay the amount due upon said notes out of the proceeds of the sale of the crops and products of the penitentiary system for the years 1921-1922, after the payment of the operating expenses of the system. It alleged that by an Act of the 37th Legislature, approved on the 2d day of September, 1921, the Legislature of the State of Texas appropriated all the proceeds arising from the operation of the penitentiary system during the years 1921, 1922, and 1923 to the payment of the expenses of operating said system, and provided that out of said proceeds, after the maintenance and operating expenses were paid, there should also be paid all other debts of the Prison Commission for which no specific appropriation had been made; that no

specific appropriation had been made for the payment of its indebtedness evidenced by these notes, and that it thereby became the duty of the Prison Commission to pay said indebtedness out of any proceeds available for that purpose arising from the operation of the said system. It further alleged that said above mentioned provision was placed in the appropriation bill after the Legislature had made a full investigation of the purchase of the Fort Bend Cotton Oil Company's mill, and after the execution and delivery of said notes to the defendant in error, and that by such Act the Legislature had made a full and complete ratification and approval of the purchase of all said property and of the execution and delivery of said note and that now and on account thereof the plaintiffs in error, the Prison Commission, can not be heard to question the legality of the transaction or to deny the validity of the notes, or to refuse to make payment of same out of the funds available for that purpose, and that therefore it is the duty of said Prison Commission to pay said indebtedness out of said funds, and that said duty is a ministerial one enjoined upon the Prison Commission by law. Therefore, it prayed for judgment against the Prison Commission for the amount of its debt, interest, attorney's fees, and costs, with foreclosure of its mortgage lien upon the property described, and that it have its peremptory writ of mandamus requiring the Prison Commission to pay said indebtedness as stated above.

Plaintiffs in error, through the Attorney General of the State of Texas, filed a general demurrer to defendant in error's petition, and especially alleged that this suit in effect is a suit against the State, and that defendant in error had not alleged that the State had consented to the bringing of same, and that the court is without jurisdiction; also, that defendant in error had not alleged that the Legislature had approved the purchase of the land and property for which these notes were given, and had not specifically authorized the payment of these notes, and had not made appropriation for their payment. Plaintiffs in error denied the validity of the notes, the authority of the Prison Commission to execute same, and made other defenses. The demurrers of plaintiffs in error were all overruled, after which the case was tried before the court without a jury. Defendant in error introduced the three notes sued on and its deed of trust. Plaintiffs in error introduced no evidence. Judgment was rendered for defendant in error for the amount of the notes sued on, together with interest, costs, and attorney's fees, and a mandamus was awarded directing and requiring plaintiffs in error to pay said judgment out of any funds on hand from the proceeds of crops after the payment of operating expenses. On appeal to the Court of Civil Appeals, that court dismissed the appeal because plaintiffs in error had not filed an appeal bond

The Court of Civil Appeals held that the Prison Commission is not included in the provisions of Article 2105, Revised Statutes. This Article reads as follows:

"Neither the State of Texas, nor any county in the State of Texas, nor the railroad commission of Texas, nor the head of any department of the State of Texas, prosecuting or defending in any action in their official capacity, shall be required to give bond on any appeal or writ of error taken by it, or either of them, in any civil case."

The court held that this is not a suit against the State, and that the Prison Commission is not a department of the State of Texas in the purview of said Article.

We have concluded that the Court of Civil Appeals is in error in both of these rulings, and therefore erred in dismissing the appeal of plaintiffs in error.

It is conceded that unless this is a suit against the State of Texas, or unless the Prison Commission is the head of a department of the State of Texas in the purview of Article 2105, the appeal was properly dismissed on account of the failure to file an appeal bond or to make affidavit in lieu thereof, as required by Articles 2084 and 2098, Revised Statutes.

We will first discuss the issue as to whether the suit is against the State.

A suit against officers of a State to require them to perform acts which constitute a performance of a contract by the State, is in effect a suit against the State itself. A suit against officers of a State, the purpose or effect of which is to establish the validity of a contract of the State, or to enforce through them the performance of a contract of the State, or to require acts to be performed by them which would impose contractual liabilities upon the State, is a suit against the State. Thomson v. Baker, 90 Texas, 163, 38 S. W., 21; Jernigan v. Finley, 90 Texas, 205, 38 S. W., 24; League v. DeYoung, 2 Texas, 497; Hosner v. DeYoung, 1 Texas, 764; Treasurer v. Wygall, 46 Texas, 447; Antoni v. Greenhow, 107 U. S., 769, 24 L. Ed., 468; 36 Cyc., 916; 25 R. C. L., p. 413, sec. 50.

The general rule is stated in 36 Cyc. and in 25 Ruling Case Law as follows:

"Suits against officers of a state as representing the state in action and liability, and in which the State, although not a party to the record, is the real party against which relief is sought and in which a judgment for plaintiff, although nominally against defendant as an individual, could operate to control the action of the state or subject it to liability, are suits against the State."

A suit and judgment against the Board of Prison Commissioners of the State of Texas upon notes alleged to have been executed by the Board in its official capacity for the use and benefit of the State, to

establish their validity or amount, or to enforce their payment, is a suit and judgment against the State.

The Court of Civil Appeals has proceeded upon the theory that in providing for the payment of any indebtedness owing by the Prison Commission out of funds remaining after maintenance and operating expenses have been paid, the Legislature thereby validated and established the notes in question, and that all that the court could do or ought to do was to ascertain the exact amount due, and to proceed by mandamus to enforce its payment as a ministerial act on the part of the Prison Commission. (See 241 S. W., 534, and opinions filed in the Court of Civil Appeals February 9, 1923, and March 19, 1923, not yet reported). This we think is wholly untenable. In the first place, the language used by the Legislature in the provision in the appropriation bill referred to is not subject to that construction. In the second place, taken in connection with the resolution adopted by the Legislature, that construction is negatived.

The provision in the general appropriation bill reads as follows:

"The proceeds of all convict labor on farms and elsewhere, the proceeds of all manufactured products, all farm products, and all other proceeds of the penitentiary system and of all other sources connected therewith, or so much thereof as may be necessary, are hereby appropriated for the maintenance and support of the penitentiary system, including buildings, farms and improvements, and repairs on same for the years ending August 31st, 1922, and August 31, 1923, out of which fund shall also be paid any indebtedness of said system not otherwise provided for by specific appropriation, as well as the expenses attached to conveying convicts to the penitentiaries and farms."

Clearly the provision for payment of "any indebtedness of said system" not otherwise provided for could not be held to prove up, to establish, or to validate any specific indebtedness against the system, especially such as might be in dispute. It could only apply to acknowledged or adjudicated indebtedness.

The following, pertaining to these notes, is taken from a resolution or committee report which was adopted by the Legislature a few days prior to the passage of the general appropriation bill containing the above mentioned provision:

"We believe that the Commission was without authority to make this purchase in the manner in which they made it, and were acting in violation of Chapter 63, page 162, General Laws, First Called Session of the 36th Legislature. . . .

"We recommend that none of the deferred payments evidenced by the lien notes executed by the Prison Commission for the Richmond Oil Mill be paid by the Prison Commission, and that the Attorney General's Department bring suit to set aside this purchase."

The Court of Civil Appeals treats the judgment as not being one to establish the debt, but only to require the Board of Prison Commissioners to perform the ministerial duty of paying the debt out of the funds prescribed. Referring to its opinion on former appeals it says:

"In deciding the questions presented on that appeal this court held that appellee's suit, in so far as it sought to recover a general judgment on the notes with foreclosure of the lien on the property, was a suit against the State and therefore could not be maintained without the State's consent, but that the suit for mandamus was not one against the State and could be maintained against appellants."

Again it says:

"Upon final trial in the court below no general judgment was rendered in favor of appellee for the amount due on the notes, nor for foreclosure of its lien, but such foreclosure is expressly denied appellee. After adjudging the amount found to be due on the notes the judgment appealed from is as follows:"

Then follows a recitation of the provision in the appropriation bill of the Thirty-seventh Legislature directing the payment of indebtedness out of what funds, if any, remain after the payment of maintenance, expenses, etc.

The District Court gave plaintiff in error judgment on the notes, the same, as far as the record discloses, as it would upon any suit upon notes the validity of which was sought to be established. It did refuse to decree foreclosure of vendor's lien, limiting defendant in error to the remedy by mandamus against the Commission to compel payment out of funds on hand after maintenance, expenses, etc., were paid.

It was incumbent upon defendant in error to establish his debt before he was entitled by mandamus or otherwise to have it paid out of surplus funds remaining in the hands of the Prison Commission. Under the provision in the appropriation bill, and in conformity to its conditions, it would be the duty of the Board of Prison Commissioners to pay any indebtedness legally established or when its validity and amount are acknowledged.

We have concluded, also, that it was not incumbent upon plaintiffs in error to file an appeal bond or supersedeas bond in this case, for the reason that under the proper construction of Article 2105, wherein it is provided that no appeal bond shall be required of "the head of any department of the State of Texas, prosecuting or defending in any action in their official capacity," it includes the Prison Commission of the State of Texas.

It is freely admitted by defendant in error that the decision of this question depends upon whether or not the above words of this statute are to be used in their popular sense or are to be limited to those de-

partments named in the Constitution as composing the executive department of the State of Texas.  It says:

"If the language is to be construed in its popular sense, or in the broader meaning thereof, it might be held to embrace any board, officer, agency, or commission of the State of Texas.  Our contention is that the language is to be used in the limited sense of the Constitution."

Section 1, Article IV, of the Constitution provides:

"The executive department of the State shall consist of a governor, who shall be the chief executive officer of the State, a lieutenant-governor, secretary of state, comptroller of public accounts, treasurer, commissioner of the general land office, and attorney general."

Article 2105, Revised Statutes, which provides that no bond shall be required of the head of any department of the State of Texas, is not at all associated with Article 5732, relating to the jurisdiction of the Supreme Court to issue mandamus against any of the officers of the executive departments of the State.  It could hardly have been in the mind of the Legislature in enacting this general statute exempting governmental agencies while "prosecuting and defending in any action in their official capacity" from giving bond on appeal in civil cases, to limit its application to the departments named in Section 1, Article IV, of the Constitution as constituting the executive department of the State.

The unmistakable intent and purpose of the Article was to exempt the State, the counties of the State, and the heads of the State's departments in the discharge of their official duties, from giving bond while prosecuting or defending any civil case in their official capacity.

It is admitted by the defendant in error that the Prison Commission is a division or department of the State Government, engaged solely in and performing governmental duties and the affairs of government.  The matters out of which this litigation arose were of and pertaining to the government of the State of Texas, and the suit was against the Prison Commission as a governmental agency or department and against the Commissioners in their official capacity. These three men, the Commissioners, being sued in their official capacity, and the purpose being to compel them to perform an official act pertaining to the property and funds of the State, could not be expected or be required to give personal bond and to impress their personal estates with large obligations.  The State in its important business affairs must fail of an adjudication of its rights in its courts, unless its said officers are entitled and authorized under the law to appeal its cases without bond.

The purpose of the Article and the necessities and reasons supporting that purpose are so clear and imperative that we think the liberal construction should be given it.  This is the natural and reas-

onable construction suggested by the Article, and would have been fraught with no difficulty but for the fact that the Article, in terms, excepted the Railroad Commission from giving bond.

It is argued that if those heads of the *executive departments* were not meant exclusively, why mention the Railroad Commission? That it is as much a department of the State Government as the Prison Commission.

Our Texas Railroad Commission was a pioneer in this field of governmental activity. It exercises governmental functions pertaining perhaps to each or all of the three divisions of government. In its rate making powers it invaded the legislative prerogatives; its powers of adjusting rates were at least quasi-judicial; and in the administration of its great powers it exercised executive functions. Its political status being novel, and its powers and their exercise yet to be determined by the courts of the State and Nation, there was peculiar and special reason why it, in terms, should be mentioned in this important Article of the Statute, so that there could be no doubt as to its being exempt from giving bond on appeal of its cases.

It is a matter of common knowledge that the State, through its Legislature, has zealously guarded the Railroad Commission. It is thought that in its zealous care for the Railroad Commission, and the knowledge that much litigation would arise concerning it and growing out of the administration of its functions, it was inserted in this Article, without intending to limit its general application to the executive departments of the State of Texas enumerated in Section 1, Article IV, of the Constitution.

The injunction issued by this Court in this cause on the 24th day of March, A. D. 1923, is continued in force and effect until the appeal of the case is finally disposed of.

The cause is remanded to the Court of Civil Appeals for its further consideration.

Chief Justice Cureton not sitting.