## CHRESTMAN v. TOMPKINS. (No. 10169.)

Court of Civil Appeals of Texas. Dallas.
March 10, 1928.

Rehearing Denied April 14, 1928.

1. Mandamus ⚫☞154(10)—Right to amend pleadings under leave of court is same in suit for mandamus as in other proceedings (Rev. St. 1925, art. 2001; Rule 12 for District and County Courts).

Under Rev. St. 1925, art. 2001, and Rule 12 for District and County Courts, right to amend pleadings under leave of court may be exercised in suit for mandamus same as in other proceedings.

2. Mandamus ⚫☞141—District court held to have jurisdiction in suit for mandamus to require city auditor to countersign warrant for $500.

District court had jurisdiction of suit for mandamus to require city auditor to countersign warrant for $500 as against contention that it lacked jurisdiction because matter in controversy did not exceed $500 in value.

3. Municipal corporations ⚫☞211—City of Dallas' board of commissioners and board of education each has plenary power in its realm (Dallas City Charter, art. 3, § 1; art. 5, §§ 1, 4).

Under Dallas City Charter, art. 3, § 1, art. 5, §§ 1, 4, city of Dallas has dual character, in one its affairs being controlled by board of commissioners, clothed with authority to administer city's affairs for strictly municipal purposes, and in other it is independent school district, whose affairs are administered by board of education, each of such characters are distinct, and each board within its domain has plenary power.

4. Municipal corporations ⚫☞169—Dallas city attorney has duty to represent city in litigation and controversies regardless of whether they pertain to school or municipal matters and act as legal adviser to board of education or other city officials and employees (Dallas City Charter, art. 4, § 1).

Under Dallas City Charter, art. 4, § 1, city attorney of Dallas has duty to represent city

in all litigation and controversies, regardless of whether litigation pertains to school or municipal matters, and act as legal adviser to board of education, or any committee thereof, as well as other city officials and employees in regard to city affairs and official duties.

**5. Schools and school districts ⬤⟹79—Dallas board of education may employ special counsel in litigation involving integrity of rule or regulation deemed by them necessary for schools (Dallas City Charter, art. 4, § 1).**

Regardless of Dallas City Charter, art. 4, § 1, relating to duties of city attorney, board of education may employ special counsel either to prosecute or defend litigation involving integrity of any rule or regulation deemed by them necessary for maintenance of efficient school system.

**6. Schools and school districts ⬤⟹158(1)—Dallas board of education has authority to require vaccination of pupils (Dallas City Charter, art. 5, § 1).**

Under Dallas City Charter, art. 5, § 1, Dallas board of education has authority in proper administration of school affairs to require vaccination of pupils as condition precedent to their attendance at school.

**7. Schools and school districts ⬤⟹79—Dallas board of education held empowered to employ special counsel to defend suit for injunction against rule requiring pupils to be vaccinated and to pay fee from general school fund (Dallas City Charter, art. 4, § 1).**

Regardless of Dallas City Charter, art. 4, § 1, relating to duties of city attorney, board of education of such city had authority to employ special counsel to assist city's legal department in defending against suit to enjoin enforcement of requirement that school children should be vaccinated and to pay fee therefor from general school fund of city.

**8. Municipal corporations ⬤⟹897—Dallas city auditor held to have duty to countersign warrant to pay attorney employed by board of education (Dallas City Charter, art. 4, §§ 3, 8; art. 5, § 1).**

Under Dallas City Charter, art. 4, § 8, relating to duties of treasurer and article 4, § 3; art. 5, § 1, relating to duties of city auditor, such official may not refuse to countersign warrant on order of board of education to pay for legal services rendered to board solely on ground that such board, in his opinion, has no authority to employ person who rendered services.

**9. Mandamus ⬤⟹102(2)—On refusal of Dallas city auditor to countersign warrant to pay attorney employed by board of education, attorney is entitled to mandamus (Dallas City Charter, art. 4, § 3; art. 5, § 1).**

Under Dallas City Charter, art. 4, § 3; art. 5, § 1, relating to duties of city auditor, where auditor refused to countersign warrant for money to pay attorney for legal services on order of board of education on theory that he did not think board had lawful authority to employ such attorney, remedy at law is in-

adequate, and attorney is entitled to mandamus to require auditor to countersign warrant.

Appeal from District Court, Dallas County; R. T. Brown, Special Judge.

Proceeding by M. N. Chrestman as relator for mandamus to be directed to R. V. Tompkins, Auditor of the City of Dallas. From a judgment sustaining general and special exceptions to the relator's petition, the relator appeals. Reversed and remanded.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, for appellant.

J. J. Collins, City Atty., and H. P. Kucera, W. H. Knight, and A. A. Long, Asst. City Attys., all of Dallas, for appellee.

LOONEY, J. M. N. Chrestman, a practicing attorney of the city of Dallas, applied to the court below for a writ of mandamus requiring R. V. Tompkins, auditor of said city, to countersign a warrant for $500 to be paid him on the order of the board of education of the city for legal services rendered under employment by said board.

The court sustained general and special exceptions urged by respondent to relator's petition, from which this appeal is prosecuted.

The case, gleaned from relator's petition, is this: Certain citizens of the city of Dallas brought suit, originally against the board of education, its secretary, the superintendent and assistant superintendent of the public schools of the city, to enjoin the enforcement of a regulation promulgated by the board requiring all pupils to be vaccinated before being permitted to attend and receive instruction in the schools, and for mandamus compelling the defendants to permit the children of plaintiffs of school age, to attend and receive instruction without vaccination. Later, a plea of nonjoinder, presented by the city attorney, was sustained, and the city and its board of commissioners were also brought in as defendants.

The case, on trial, resulted in judgment for the defendants, which was affirmed by this court. See Johnson v. City of Dallas (Tex. Civ. App.) 291 S. W. 972.

It appears that relator was employed by the board of education to represent it and its members in defense of the suit in the trial court; he participated in the trial, and in all respects rendered the services entitling him to be paid the fee agreed upon. A warrant was drawn in his favor on the treasurer of the city, by authority of the board of education, signed by its president and secretary, and this, together with certified copies of the orders of the board of education, showing relator's employment, the amount agreed to be paid for his services, and the authorization for its payment, were presented by him to respondent for audit

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and for his signature, which was refused on the sole ground that in the opinion of respondent the board of education was without lawful authority to issue the warrant.

Relator alleged that respondent was not warranted, by any duty imposed on him by the charter of the city, in refusing his signature; that, without the same, the warrant could not be cashed or the money obtained from the treasurer of the city, although the board of education was ready and willing to pay the fee; that relator had no adequate remedy, except that of mandamus, to compel respondent to countersign the warrant, and unless the writ is issued, he will suffer irreparable loss.

One of the questions presented for our consideration arose from the action of the court in sustaining a special exception urged by respondent to relator's amended original petition, to the effect that, the court having sustained exceptions to the original petition, relator was not entitled, under the rule of practice in mandamus cases, to amend his petition.

[1] The right to amend pleadings, under leave of the court, is statutory, and may be exercised in a suit for mandamus the same as in other proceedings. Article 2001, R. S. 1925; rule 12 for district and county courts; Montague County v. White (Tex. Civ. App.) 250 S. W. 736, 737; 18 R. C. L. p. 351, § 309. We are of the opinion, therefore, that the court erred in sustaining the exception under consideration.

[2] The court below also sustained, among others, a special exception that challenged its jurisdiction on the ground that the matter in controversy did not exceed $500 in value. This, in our opinion, was error. Relator did not seek judgment on the claim; therefore its amount was not in controversy. The purpose of his suit was to compel the auditor of the city to perform a ministerial duty imposed upon him by law. The holding of the Supreme Court, in Anderson v. Ashe, 99 Tex. 447, 90 S. W. 872, sustains this conclusion. In the case just mentioned, a suit was brought to compel the auditor of Harris county to officially countersign a warrant upon the county treasurer for $225 issued in his favor by the commissioners' court. No relief was sought, except mandamus to compel the auditor to countersign the warrant. The Court of Civil Appeals certified the case to the Supreme Court, and, among others, asked this question: "Did the district court have jurisdiction of the cause?" The Supreme Court answered as follows:

"We answer the first question in the affirmative. The amount of the claim was not in controversy in this case. The relator did not seek any judgment of the court as to the amount or the validity of his claim, but simply to enforce the performance of a ministerial act enjoined by law upon the auditor." Luckey v. Short, 1 Tex. Civ. App. 5, 20 S. W. 723;

Denman v. Coffee, 42 Tex. Civ. App. 78, 91 S. W. 800.

The controlling question in the case, however, is this: Was the board of education clothed with implied authority under the city charter and general laws to contract with relator for his services and direct payment of the fee agreed upon from the general school fund of the city?

The contention of respondent is that the board of education was not authorized to enter into the contract or to issue the warrant in question, for the reason that it is simply an administrative board of the city government, and, as such, is not capable of suing and being sued as an entity separate and apart from the city; that the city was the real and necessary party defendant to the suit; that provisions of the city charter made it the duty of the city attorney to represent the city in all litigation, to counsel and advise the board of education, or any committee thereof, in regard to matters involving official duty, and that it was negatively prohibited by these express provisions of the charter to employ relator and incur the indebtedness.

[3] The city of Dallas has a dual character—in one its affairs are controlled by a board of commissioners, clothed with authority to administer the affairs of the city for strictly municipal purposes, in the other it is an independent school district, whose affairs are administered by a board of education clothed with plenary power to maintain an efficient system of schools.

This duality of character is revealed by the following provisions of the city charter. Section 1, art. 3, reads:

"All powers conferred on the city shall, unless otherwise provided in this charter, be exercised by a mayor and four commissioners, who together shall be known and designated as the board of commissioners, all of whom shall be elected by the qualified voters of the city at large and shall devote their entire time to the service of the city."

Section 1 of article 5 provides:

"The city public schools shall be under the management and control of a board of education, composed of a president and six members. * * * The members of said board shall serve without compensation, shall have exclusive control of the public schools of the city of Dallas, and shall have full and ample authority, in accordance with the provisions hereof, to provide necessary school buildings, facilities, etc. * * * Among the powers hereby conferred on said board of education, the following are for greater certainty enumerated: [Here various and sundry powers are conferred not necessary to notice.] To employ superintendents, teachers, and such other persons as may be necessary, and to fix their compensation and prescribe their duties, and to establish all such regulations and rules deemed necessary by the board to provide and maintain an efficient system of public schools in the city of Dallas.

The board of commissioners, when levying the annual tax for the fiscal year, shall levy an ad valorem tax of one-fourth of one per cent. of the taxable value of the city of Dallas for that fiscal year, and said tax, when collected, shall be deposited with the city treasurer by the board of commissioners to the credit of the school fund, which said sum, together with all sums received from the state, county, and other school funds, shall be held by the city treasurer subject to the order and disbursement of the board of education, and shall be paid out upon warrants issued by order of said board of education, audited by the city auditor, and signed by the president and secretary of the board of education."

With respect to the duties of the treasurer and the conditions on which public funds in his custody shall be paid, the following excerpt from section 8 of article 4 of the charter is pertinent:

" * * * He (the treasurer) shall receive and securely keep all moneys belonging to the city, and make all payments for the same upon an order signed by the mayor and countersigned by the auditor, except that payments from the school funds shall be upon an order signed by the president of the board of education, countersigned by the auditor and attested by the secretary of said board; provided that no order shall be paid unless it shows upon its face that the board of commissioners, or the board of education, as the case may be, has ordered its issuance and for what purpose."

The only check or veto possessed by the board of commissioners over the action of the board of education is contained in the following provision of section 4, article 5, of the charter:

"Whenever the amount involved in any purchase or sale of property proposed to be made by the board of education shall equal or exceed the sum of $1,000, it shall be the duty of said board to certify its action with respect to said matter to the board of commissioners, and said board shall have power to veto and nullify said action within five days after being notified thereof, but to become effective such veto must be supported by and receive the votes of four members of said board and such action must be taken within five days after notice in writing of the terms of such proposal shall have been filed by the board of education with the board of commissioners."

Thus it is apparent that these characters, one for municipal purposes strictly, the other for school purposes, are distinct; the board of control for each respectively being clothed with plenary power to conduct the affairs of the realm committed to its management.

Commenting on a similar situation presented in City of Rockdale v. Cureton, Attorney General, 111 Tex. 136, 229 S. W. 852, Chief Justice Phillips, for the Supreme Court, had this to say:

"The Constitution (section 10 of article 11) has empowered the Legislature to constitute any town or city an independent school district. The Legislature, therefore, had the power to say, as it has done in article 2871, that a city or town taking over the control of its public schools shall constitute such a district. There may thus be conferred upon a city a dual character, and with such character, dual powers. There could have been no purpose in authorizing the creation of towns and cities as independent school districts—a recognized separate class of municipal corporations with individual powers, unless in that capacity they were to have the powers of such districts.

"The city of Rockdale had lawfully acquired this dual character. It had its powers as strictly a municipality, to be exercised for strictly municipal purposes; and it had its powers as a duly constituted independent school district. The two are not to be confused." City of Houston v. Little (Tex. Civ. App.) 244 S. W. 247, 253.

We are of the opinion that, under this dual form of city government, the board of education is as sovereign within the sphere of its jurisdiction, that is, in regard to the affairs of the city, as an independent school district, as is the board of commissioners in the management of its affairs for strictly municipal purposes. We find no provision of the city charter expressly authorizing either board to employ special counsel to defend or prosecute suits, nor is either board expressly prohibited from exercising such authority.

The office of city attorney is created by article 4, § 1, of the charter, and, among other duties, it is required that:

"Said officer shall represent the city in all litigation and controversies. The board of commissioners shall be empowered at its discretion to employ an assistant or assistants for said officer, and to fix the compensation to be paid for such service, and such city attorney and his assistants shall have authority to administer oaths and affidavits. * * * He shall be the legal adviser of the mayor, the board of commissioners and board of education, or any committee thereof, and all city officers and employés with respect to any legal question involving an official duty or any matter pertaining to the affairs of the city of Dallas. The city attorney shall perform such other duties as the board of commissioners may direct. * * * "

Appellee insists that the board of education was not at liberty to ignore these provisions of the charter; that they exclude the idea that the board was authorized to employ relator as special counsel, and order his compensation paid from the public school fund of the city.

[4, 5] We are of the opinion that the charter makes it the duty of the city attorney to represent the city in all litigation and controversies, without regard to whether the litigation pertains to school or municipal matters, and also as legal adviser to serve the board of education, or any committee thereof, as well as other city officials and employees in regard to city affairs and official.

duties. However, we do not accept the view that these provisions are exclusive, or that they negatively prohibit the board of education from employing special counsel, either to prosecute or defend litigation, involving the integrity of any rule or regulation deemed by them necessary for the maintenance of an efficient system of schools for the city.

[6] In Johnson v. City of Dallas, supra, we held, in affirming the power of the board to promulgate the vaccination order, that:

"Under general grants of power, in substance the same as those given the board of education of the city of Dallas, it has been held that school boards were authorized, in the proper administration of the affairs of schools, to require the vaccination of pupils as a condition precedent to their attendance upon said schools. McSween v. Board of School Trustees, 60 Tex. Civ. App. 270, 129 S. W. 206; Staffel v. San Antonio, etc. (Tex. Civ. App.) 201 S. W. 413, 414; Zucht v. King (Tex. Civ. App.) 225 S. W. 267; City of New Braunfels et al. v. Waldschmidt, 109 Tex. 302, 207 S. W. 303."

[7] That this holding is correct we have no doubt; therefore, as the board was authorized to promulgate the order requiring vaccination of students, it could and should have seen to it that the same was properly defended against an attack that sought its destruction. The board being of the opinion that it was necessary to employ special counsel to assist the legal department of the city in properly launching and giving direction to the defense in the trial court, we think in so doing they acted clearly within the scope of their implied authority.

In the recent case of the City of Corsicana v. Babb (Tex. Com. App.) 290 S. W. 736, decided on recommendation of the Commission of Appeals, the doctrine of implied power was extended much further than is proposed in the case at bar. In that case, the city commissioners of Corsicana employed special counsel in two cases. Certain citizens sought to enjoin the payment of the fees contracted to be paid the attorneys employed. In one of these cases, the attorney was employed to prosecute persons under indictment for the murder of a policeman of the city who was slain while in the discharge of his duties. With reference to the legality of this employment, the court said:

"If a city policeman be slain in the bona fide performance of his official duties, the city has implied power, unless such power be clearly denied in its charter, to employ an attorney to prosecute his slayer and to appropriate city funds to that purpose."

The other employment was for the defense of two of the policemen of the city who were under indictment for murder growing out of the killing of a man by them while attempting his arrest for an alleged violation of law. As to the legality of this employment, the court said:

"A city, therefore, is invested with the discretionary power to employ attorneys to defend one of its policemen against a criminal charge founded upon an act done by such officer in the bona fide performance of his official duties. In such a case the city is under no duty or obligation to employ an attorney, or to indemnify the officer for the payment of his fee; but, if it [does] employ the attorney, the municipality becomes legally bound to pay his compensation."

This principle was also involved in the decision of the Court of Civil Appeals in City of Denison v. Foster et al., 28 S. W. 1052.

We are of the opinion, therefore, and so hold, that the board of education of the city of Dallas was authorized to employ relator to defend the suit in question, and to pay his fee from the general school fund of the city.

Another exception, urged by respondent to relator's petition and sustained by the court, was the following:

"Respondent specially excepts to the said petition of relator because it affirmatively appears that the said relator is seeking to interfere with the lawful discretion reposed by law in the said respondent, acting as a public officer, and city auditor of the city of Dallas."

Appellant contends that respondent, as city auditor, was not clothed with power to veto the action of the board of education and prevent payment of the warrant on the ground that, in his opinion, the contract of employment was unauthorized by law.

Respondent, as auditor, served the city of Dallas not only in regard to matters strictly municipal, but in regard to matters pertaining to the management and control of the school system as well. His general duties are outlined in section 3 of article 4 as follows:

"* * * It shall be the duty of the auditor to examine in detail all bills, accounts and claims against the said city, and if found correct, to sign his name in approval thereof, but if found incorrect he shall return them to the party presenting the same for correction. He shall be the general accountant of the said city, and shall keep in books regular accounts of all real, personal and mixed property of the said city; of all receipts and disbursements of money; and under proper heads, separately, each source of receipt and the cause of each disbursement; and shall also keep an account with each person, including the officers who have money transactions with the said city, crediting amounts allowed by proper authority, and specifying the particular transaction to which such entries apply. It shall be his duty at least once in each month to examine the books of account of all officers of said city charged with the receipt and disbursement of money, and if they be found incorrect, to at once make a report in writing of the same to the mayor."

These are his general duties. When warrants issued by the board of commissioners

are presented for his signature, this provision (section 3 of article 4) controls:

"It shall also be his duty to examine all warrants and countersign the same after appropriation has been duly made to pay the same by said board of commissioners."

[8] With respect to his duties when warrants issued by the board of education are presented for his signature, this provision, (part of section 1 of article 5) of the charter controls:

"An official statement or copy of all contracts, claims, accounts, payrolls and demands of whatever nature whereby any money is to be disbursed or expended from the school funds and also complete annual reports showing the operations of the schools, shall be filed with the city auditor, who shall examine, adjust and audit all claims, accounts, pay rolls and demands before same shall be paid. * * *"

As heretofore shown, when relator presented to respondent for his signature the warrant authorized by the board of education, and signed by its president and secretary, he also presented certified copies of the orders of the board showing relator's employment, the amount to be paid for his services, and the authorization for its payment. Respondent questioned neither the existence of the contract of employment nor the fact of its performance by relator nor the amount of the claim. He declined to countersign the warrant solely on the ground that the board of education, in his opinion, was without lawful authority to employ relator and incur the indebtedness. In this situation it is not necessary for us to determine the scope of the discretion committed to the auditor; it being only necessary for our present purpose to decide whether or not he was empowered to exercise the discretion attempted. In regard to this, we are of the opinion that he was not given, under any provision of the city charter, the right to veto the action of the board of education. The duty he was called upon to perform under the circumstances was purely ministerial, and, as the claim was acknowledged, the amount thereof definitely ascertained and certain, it was his plain duty to countersign the warrant authorizing its payment. Anderson v. Ashe, 99 Tex. 447, 90 S. W. 872; Altgelt v. Campbell (Tex. Civ. App.) 78 S. W. 967; Wells v. Bruner (Tex. Civ. App.) 204 S. W. 363; Herring v. Houston National Bank, 113 Tex. 264, 253 S. W. 813, 815.

[9] Appellant also assigns error on the action of the court in sustaining a special exception to his petition to the effect that it affirmatively appeared he had an adequate remedy, aside from the writ of mandamus, and therefore was not entitled to the relief sought.

As heretofore shown, there was no controversy over any matter except as to the legal authority of the board of education to incur the indebtedness and pay for same out of the general school fund of the city. Relator's fee had been earned, it was then due, the board of education was willing to pay, and for that purpose had authorized the issuance of the warrant. Relator was entitled to have his fee paid at once without being forced to pursue the circuitous route of a suit in court to establish the claim, with the expense and delay necessarily incident to such a course.

If the auditor, for the reason stated, is permitted to refuse approval of this claim, clothed as it is with indisputable evidence of validity and correctness, and thus compel the institution of a suit for its establishment by judgment before meriting his approval, he could, if in an arbitrary mood, likewise withhold approval from every warrant issued by authority of the board of education for the payment of salaries of officers, teachers, and employees, to the utter demoralization of the school system of the city.

The only adequate, specific, appropriate remedy for the situation presented was the writ of mandamus compelling the auditor to do the only thing necessary to be done; that is, to approve the warrant for payment, no other could afford relief as adequate.

In International Water Co. v. City of El Paso, 51 Tex. Civ. App. 321, 327, 112 S. W. 816, 819, responding to the contention that mandamus could not be resorted to because plaintiff had an adequate remedy at law, the court, quoting from High on Extraordinary Remedies, said:

"It is to be borne in mind, in the application of the principle under discussion, that the existing legal remedy relied upon as a bar to interference by mandamus must not only be an adequate remedy in the general sense of the term, but it must be specific and appropriate to the particular circumstances of the case; that is, it must be such a remedy as affords relief upon the very subject matter of the controversy, and if it is not adequate to afford the party aggrieved the particular right which the law accords him, mandamus will lie, notwithstanding the existence of such other remedy."

We think plaintiff stated a good cause of action, was entitled to the relief sought, and that the court erred in sustaining demurrers to his petition. The case will therefore be reversed and remanded for trial.

Reversed and remanded.