

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00315-CV

IN THE MATTER OF THE
GUARDIANSHIP OF EDWIN
WOOLEY, AN ALLEGED
INCAPACITATED PERSON

----------

FROM PROBATE COURT NO. 2 OF TARRANT COUNTY
TRIAL COURT NO. 2014-GD00251-2

----------

## MEMORANDUM OPINION[1]

----------

This is an interlocutory appeal from the denial of a plea to the jurisdiction in

a guardianship case. The statutory probate court[2] appointed Appellant the

Department of Aging and Disability Services (DADS) as temporary guardian of

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Gov't Code Ann. § 25.2221 (West 2004) (stating that Probate Court No. 2 of Tarrant County is a statutory probate court).

Edwin Wooley, an incapacitated person. The court investigator filed an application for permanent guardianship suggesting that DADS or another person be appointed as permanent guardian. DADS filed a plea to the jurisdiction arguing that it could not be appointed as the permanent guardian if it neither applied to be appointed guardian nor consented to the appointment. The probate court denied DADS's plea. DADS then filed this appeal.

In two issues, DADS argues (1) that it did not waive its immunity from suit and therefore the probate court did not have jurisdiction and (2) that even if sovereign immunity does not apply, the probate court did not have statutory authority—and therefore did not have jurisdiction—to appoint it as permanent guardian.[3] Because we hold that DADS is not immune from suit and that we need not address its statutory argument, we affirm.

## Background

The Department of Family and Protective Services (DFPS) filed a petition under chapter 48 of the human resources code for protection of an elderly or disabled person in an emergency.[4] Wooley, a seventy-six-year-old man with

---

[3]This court received a friend of the court brief from Terry Hammond, a licensed Texas attorney with extensive practice in adult protection, probate, estate, and guardianship law.

[4]*See* Tex. Hum. Res. Code Ann. § 48.209 (West Supp. 2015) (setting out when DFPS must refer an individual to DADS for guardianship services).

dementia, lived alone at his home, and Adult Protective Services (APS)[5] received a report that he was neglecting his care.

During the initial meeting with Wooley, APS found "Wooley's home to be filled with trash, dog feces, rotten food, dirty dishes, and a bad odor." APS stated that Wooley was incapable of maintaining his living conditions and that he refused to relocate. A doctor performed a pre-removal assessment[6] and found that Wooley was frail, had poor cognition and poor memory, was suffering from neglect, and lacked the capacity to consent to or reject protective services. DFPS alleged that Wooley's daughter had stopped trying to help him "due to hi[s] refusing help and being emotionally abusive towards her."

The probate court signed an emergency order to have Wooley removed from his home and placed in a nursing facility. The court appointed an attorney ad litem and set a hearing date to determine whether further orders would be needed. The court appointed Cindy Brown as court visitor[7] to evaluate Wooley and to file a report.

APS notified the court that on June 23, 2014, it had made a referral to DADS for guardianship services for Wooley. Brown filed her report in which she

---

[5]*See id.* § 40.0315 (West Supp. 2015) (referring to APS as a division of DFPS).

[6]*See id.* § 48.208(c)(4) (West Supp. 2015).

[7]*See* Tex. Est. Code Ann. §§ 1054.102–.105 (West 2014) (providing for a court visitor program in each statutory probate court for the assessment of the conditions of wards and proposed wards).

3

stated that Wooley did not want a guardian but needed one. She also reported that he was adamant that he did not want his daughter to be his guardian. Court investigator Jeffery Arnier[8] filed an application for the appointment of permanent guardian of the person and of the estate for Wooley.[9] He sought the appointment of "an eligible and suitable person . . . , *possibly* [DADS]." [Emphasis added.]

DADS filed a plea to the jurisdiction in which it asserted that it had sovereign immunity as a state agency[10] and that, because it had not filed an application to be appointed as permanent guardian and had not agreed to accept the appointment, the court did not have jurisdiction to appoint it as permanent guardian. DADS stated in the plea that it had determined that guardianship was not appropriate for Wooley.[11]

The court appointed Robert Loudermilk as guardian ad litem. The day before what was originally set as the hearing on the application for permanent

---

[8]*See id.* § 1054.151 (West 2014) ("On the filing of an application for guardianship . . . , a court investigator shall investigate the circumstances alleged in the application to determine whether a less restrictive alternative to guardianship is appropriate."), § 1054.152 (West 2014) (setting out the duties of a court investigator in a guardianship proceeding).

[9]*See id.* § 1102.004 (West 2014) (providing that a court investigator must file an application for the appointment of a guardian for a person if, after an investigation, the investigator believes the person is incapacitated).

[10]Tex. Hum. Res. Code Ann. § 161.002 (West 2013).

[11]*See id.* § 161.101(c-1) (West Supp. 2015) (providing that, after receiving a referral for guardianship services, DADS must make a determination of whether guardianship is appropriate and that this determination must be made not later than the seventieth day after the date that DADS receives a referral).

4

guardianship, Loudermilk filed an application for the appointment of a temporary guardian, proposing that DADS be appointed. He stated that the emergency order placing Wooley into care was due to expire that day, and given that Wooley had stated that he wanted to leave the nursing home and go home, Wooley might leave care and would be in imminent danger.

At the hearing the next morning, the court stated that "we're going to be operating on . . . an application for the appointment of a temporary guardian of the person." Counsel for DADS requested a continuance on the hearing, asserting that he was ready to move forward on the hearing on the application for permanent guardianship but had only been served with the application for temporary guardianship the day before. The probate court denied the continuance on the ground that DADS had already investigated the case and had made a determination that a lesser restrictive alternative was available—specifically, DADS's determination that Wooley was not in danger because he was in a nursing home and had not yet tried to leave despite the emergency order having expired twelve hours before.

At the hearing, a supervisor with APS testified that Wooley wanted to leave the nursing facility and return to his home, but if he did so, he would be in imminent danger of harm. Brown testified that Wooley's only relatives did not want to be his guardian. Brown testified that Wooley had dementia and was adamant about wanting to return to his home. She stated that he would not be able to pay the nursing facility expenses without filling out a Medicaid application

5

and that Wooley could not and would not help with the application. Since Wooley's family was not available to help with the process, Wooley would need a guardian to help with the Medicaid application. After the hearing, the probate court appointed DADS as temporary guardian.

DADS filed an amended plea to the jurisdiction, again asserting that the probate court did not have jurisdiction to appoint it as permanent guardian. The probate court denied the plea. DADS then brought this appeal. The probate court has not rendered an order appointing DADS as permanent guardian of Wooley.[12]

## Applicable Law

"Immunity from liability and immunity from suit are two distinct principles."[13] "[I]mmunity from suit bars an action against the state unless the state expressly consents to the suit."[14]

A guardianship proceeding is a proceeding in rem.[15] "From the filing of the application for the appointment of a guardian of the estate or person, or both, until the guardianship is settled and closed under this chapter, the administration

---

[12] *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(c) (West Supp. 2015) (providing for when an interlocutory appeal from the denial of a plea to the jurisdiction stays all other proceedings in the trial court).

[13] *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999).

[14] *Id.*

[15] Tex. Est. Code Ann. § 1022.002(d) (West 2014).

6

of the estate of a[n] . . . incapacitated person is one proceeding for purposes of jurisdiction."[16]

The Texas Estates Code grants authority to a probate court to appoint a guardian for an incapacitated person; by statute, "[t]he court *shall* appoint a guardian for an incapacitated person . . . according to the circumstances and considering the incapacitated person's best interests."[17] Chapter 1104 of the Estates Code addresses the selection of guardians.[18] This proceeding was filed before the effective date of changes to the estates code requiring the consideration of certain less restrictive alternatives to guardianship.[19]

Section 1251.011 states that DADS may be appointed as a temporary guardian.[20] Section 1203.108(b) specifies the circumstances under which DADS may be appointed as a successor guardian.[21] The estates code does not define the term "successor guardian."

Title 11 of the human resources code addresses aging, community-based, and long-term care services, and chapter 161 covers DADS and the provision of

---

[16] *Id.*

[17] *Id.* § 1104.101 (West 2014) (emphasis added).

[18] *Id.* §§ 1104.001–.412 (West 2014 & Supp. 2015).

[19] *See id.* § 1101.101(a)(1)(D), (E) (West 2014 & Supp. 2015) (effective on September 1, 2015).

[20] *Id.* § 1251.011 (West 2014).

[21] *Id.* § 1203.108(b).

guardianship services.[22] That chapter states that DADS is responsible for "serving as guardian of the person or estate, or both, for an incapacitated individual as provided by Subchapter E of this chapter and [the guardianship sections of the] Estates Code."[23]

Subchapter E of human resources code chapter 161 addresses guardianship services.[24] Under section 161.101, if DADS receives a referral for guardianship services, DADS must conduct an assessment of whether guardianship is appropriate.[25] If DADS finds that guardianship is appropriate, it must either file an application to be appointed as the guardian or refer the proposed ward to an alternative person or program to serve as guardian.[26] On the other hand, DADS "may not be required by a court to file an application for guardianship," and except as provided in the section of the estates code for appointment of a successor guardian, "the department may not be appointed as permanent guardian for any individual *unless* the department files an application

---

[22]Tex. Hum. Res. Code Ann. §§ 161.001–.353 (West 2013 & Supp. 2015). Sections 161.021–.030 were repealed as of September 1, 2016, and sections 161.002, 161.032, 161.051—.056, 161.0711, 161.0712, and 161.072 repealed as of September 1, 2017, by Act of May 30, 2015, 84th Leg., R.S., ch. 837, § 1.23(c)(e).

[23]*Id.* § 161.071(10).

[24]*Id.* §§ 161.101–.114.

[25]*Id.* § 161.101(b).

[26]*Id.* § 161.101(c).

to serve or otherwise agrees to serve as the individual's guardian of the person or estate, or both."[27]  DADS argues that this section is jurisdictional.

## Discussion

DADS brings two issues.  It first argues that to maintain an action against it, either a valid waiver of immunity or its consent to suit must be shown, and no such waiver or consent exists in this case.  Second, DADS argues that the applications proposing that it be appointed permanent guardian exceeded the jurisdiction conferred upon the probate court by statute.

The Supreme Court of Texas has long followed the general rule that when officers of the state are party to a suit, but the state is not, the suit is nevertheless "against the state" when the state "is the real party against which relief is sought and in which a judgment for plaintiff, although nominally against defendant as an individual, could operate to control the action of the state or subject it to liability."[28]  That court has continued to hold that if the purpose of a suit against state officials "is to control action of the State or subject it to liability, the suit is

---

[27] *Id.* § 161.101(d) (emphasis added).

[28] *Herring v. Houston Nat'l Exch. Bank*, 253 S.W. 813, 814 (1923) (citation and quotation marks omitted); *see also Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015) ("[T]he Legislature has the responsibility to determine how . . . public funds will be spent."); *Lenoir v. U.T. Physicians*, No. 01-14-00767-CV, 2016 WL 1237771, at *14 (Tex. App.—Houston [1st Dist.] Mar. 29, 2016, no. pet.) (op. on reh'g) ("When there is no concern that the state will be required to divert funds in the face of litigation, the fiscal rationale for immunity is not implicated").

against the State and cannot be maintained without the consent of the Legislature."[29]

This proceeding is in rem,[30] and neither DADS nor its employees are defendants.[31] The proceeding is not against any property of DADS or to enforce a right in something against DADS.[32] DADS is, however, a party to this proceeding, and a court order appointing DADS as temporary or permanent guardian imposes obligations on it to perform certain acts.[33] The imposition of

---

[29]*Griffin v. Hawn*, 341 S.W.2d 151, 152 (1960); *cf. Short v. W. T. Carter & Bro.*, 126 S.W.2d 953, 962, 963 (1938) (holding that a suit to enjoin the Land Commissioner from executing a lease on public lands "is a suit to control the action of the State . . . and is therefore in effect a suit against the State" and that "[t]o control the discretionary action of the Land Commissioner through the processes of the courts in this regard is to control the State itself").

[30]Tex. Est. Code Ann. § 1022.002(d).

[31]*See Bodine v. Webb*, 992 S.W.2d 672, 676 (Tex. App.—Austin 1999, pet. denied) ("An *in rem* action is a proceeding or action instituted directly against a thing, an action taken directly against property, or an action that is brought to enforce a right in the thing itself.").

[32]*See City of Blue Mound v. Sw. Water Co.*, 449 S.W.3d 678, 683 (Tex. App.—Fort Worth 2014, no pet.) ("A proceeding in rem is essentially a proceeding to determine rights in a specific thing or in specific property."); *see also Shaffer v. Heitner*, 433 U.S. 186, 199, 207, 97 S. Ct. 2569, 2577, 2581 (1977) (stating that in an in rem or quasi in rem action, the court's jurisdiction is based on its power over property within its territory, and that the phrase "jurisdiction over a thing" is an "elliptical way of referring to jurisdiction over the interests of a person in a thing" (citation and quotation marks omitted)).

[33]*See, e.g.*, Tex. Est. Code Ann. § 1104.251 (West Supp. 2015) (requiring DADS employees serving as guardians to be certified as guardians); *id.* § 1151.051 (West Supp. 2015) (setting out duties of a guardian of the person of a ward, including the duty to provide the ward with clothing, food, medical care, and shelter); *id.* § 1154.051 (West 2014) (requiring a guardian to file with the

statutory obligations on a guardian would seem to raise the question of whether an order appointing DADS as permanent guardian operates to control the action of DADS, thus effectively making this proceeding "against the State."[34] However, due to the nature of guardianship proceedings generally and this proceeding specifically, DADS was not entitled to a dismissal under the doctrine of sovereign immunity.

The purpose of a guardianship proceeding is not to control a state agency, but to promote and protect the well-being of an incapacitated person.[35] The relief sought in this case is the appointment of a permanent guardian—possibly, though not necessarily, DADS. Certainly, the probate court has jurisdiction over Wooley's guardianship proceeding and to appoint a permanent guardian.[36] And the legislature has given the probate court jurisdiction to make DADS a party to guardianship proceedings, as it did in this case, through the appointment of DADS as a temporary guardian.[37] Thus, immunity from suit required DADS's

_____

court a detailed inventory of the ward's property); *id.* § 1154.101 (West 2014) (requiring a guardian to file updated inventories and appraisements); *id.* § 1204.101 (West 2014) (requiring the guardian of the estate to present to the court a verified final account for final settlement when the guardianship is required to be settled).

[34] *See* Tex. Est. Code Ann. §§ 1151.051–1164.002 (West 2014 & Supp. 2015) (listing duties and liabilities of guardians).

[35] *Id.* § 1001.001 (West Supp. 2015).

[36] *See id.* § 1104.101 (West 2014).

11

dismissal only if the application for permanent guardianship constituted a separate proceeding.

As we noted above, from the moment an application for the appointment of a guardian is filed until the time at which the guardianship is closed, the administration of the guardianship estate is one proceeding.[38] DADS treats the temporary guardianship proceedings as separate from the permanent guardianship proceedings, but, by statute, that is not the case.[39] And in this sole proceeding, DADS continues to serve as temporary guardian. Because the probate court had jurisdiction over a proceeding to appoint a guardian for Wooley,[40] to appoint DADS as temporary guardian for Wooley, and to monitor DADS's performance of its role as temporary guardian,[41] DADS's general

---

[37]*See id.* § 1251.011; *see also id.* § 1101.104 (West 2014) (requiring a physician or psychologist licensed in the state or certified by DADS to examine a proposed ward); *id.* § 1104.409 (West Supp. 2015) (providing that the court shall use information provided in the subchapter to determine whether to appoint or remove DADS); *id.* § 1105.051 (West 2014) (requiring a representative of DADS to take an oath of guardian if appointed as guardian); *id.* § 1163.005 (West 2014) (providing that if DADS is the guardian of the estate, it must attach an affidavit when filing its account); *id.* § 1203.151 (West 2014) (requiring DADS to notify the court of the availability of a successor guardian).

[38]*Id.* § 1022.002(d).

[39]*Id.* § 1022.002(d).

[40]*See id.* § 1104.101.

[41]*See, e.g., id.* § 1163.001 (requiring the guardian of the estate to file an annual account of the estate), § 1154.051 (requiring the guardian of the estate to file with the court clerk an inventory of the ward's property), §1154.054 (providing for the judge to review and approve or disapprove the guardian's filed inventory),

immunity from suit under the doctrine of sovereign immunity has no application to Wooley's guardianship suit. DADS was not entitled to be dismissed from the proceeding on its plea to the jurisdiction. We overrule DADS's first issue.

As we have noted above, human resources code section 161.101 provides that DADS may not be appointed as permanent guardian without its consent except when DADS is appointed as successor guardian.[42] DADS next asserts that this section is jurisdictional, and therefore even if sovereign immunity does not apply, under the human resources code, the probate court has no jurisdiction to render an order appointing it permanent guardian.

The application for permanent guardianship asked that a guardian, "*possibly* DADS," be appointed. [Emphasis added.] The probate court has not yet appointed DADS as permanent guardian, and the record, at this stage, contains no indication that it intends to do so.

We need not address this issue. *If* section 161.101 provides DADS with any immunity, it is immunity from *liability*, not immunity from suit.[43] The section does not contain any language that can reasonably construed as preventing

---

§ 1161.204 (requiring the guardian of the estate to file with the court a report when the guardian has loaned money from the ward's estate), § 1251.102 (West 2014) (providing that the estate code provisions relating to guardianships apply to temporary guardianships).

[42]Tex. Hum. Res. Code Ann. § 161.101.

[43]*See Jones*, 8 S.W.3d at 638 (differentiating between immunity from suit and immunity from liability, which is an affirmative defense).

DADS from being made a party to a guardianship proceeding or requiring its dismissal from a guardianship proceeding once it had already been properly brought in (as it had in this case).[44]  Further, interpreting the statute as jurisdictional would mean that DADS should be dismissed from this guardianship proceeding, *even while* it still serves as Wooley's temporary guardian, thus completely depriving the probate court of any oversight of the temporary guardianship.[45]  That cannot be the result the legislature intended.

The probate court had jurisdiction to bring DADS into this guardianship proceeding, and section 161.101 does not operate to defeat the court's jurisdiction.  We overrule DADS's second issue.

## Conclusion

Having held that sovereign immunity does not require the dismissal of DADS from the proceedings below, we affirm.

---

[44] *See In re Brehmer*, 428 S.W.3d 920, 922 (Tex. App.—Fort Worth 2014, no pet.) (orig. proceeding) (stating that to determine whether a statute is jurisdictional, our goal is to ascertain the legislature's intent, and that "[a]bsent clear legislative intent, we resist classifying a statutory provision as jurisdictional"); *see also City of DeSoto v. White*, 288 S.W.3d 389, 395 (Tex. 2009) (stating that "just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional") (citation and quotation marks omitted).

[45] *See In re Brehmer*, 428 S.W.3d at 922 (stating that in determining whether the legislature intended a provision to be jurisdictional, we may consider the consequences that result from each possible interpretation).

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GABRIEL, and SUDDERTH, JJ.

GABRIEL, J., filed a concurring opinion.

SUDDERTH, J., filed a dissenting opinion.

DELIVERED:  June 2, 2016